## N. A. MAGEE v. THOMAS CHADOIN'S EX'R.

1. APPEAL—TRESPASS TO TRY TITLE.—By appeal secured to the plaintiff in his second suit in trespass to try title, is meant the right to have the action of the court revised by the appellate court, whether by appeal or by writ of error.
2. WRIT OF ERROR by our Supreme Court has always been held to be but another mode of bringing up a case for revision.
3. TRESPASS TO TRY TITLE—A suit involving the trial and determination of the conflicting titles of the parties to land is such an action as authorizes the bringing of a second suit by the plaintiff.
4. PLAINTIFF.—The party first invoking the action of the court upon the controversy, as against the adverse party, is the plaintiff, and who alone is authorized to bring a second suit in trespass to try title.

APPEAL from Fayette. Tried below before the Hon. I. B. McFarland.

This case has been before this court twice. (20 Tex., 476, and 30 Tex., 644.)

In 1850 Chadoin commenced an action of forcible entry and detainer against Richard A. Magee, husband of Nicinda. November 1, 1850 Nicinda, joined by her husband, brought suit in the District Court of Lavacca county to enjoin the action of forcible entry and detainer, setting out her title to six hundred and forty acres of land, and denying that she had possession of any other part of the league claimed by Chadoin. Her prayer in the original petition is "that Chadoin be cited to answer, and that he be enjoined from proceeding or continuing said suit; that she be quieted in the possession of said six hundred and forty acres of land, and for all other equitable relief."

Chadoin appeared and moved to dissolve the injunction ; also filed an answer setting up his superior equitable title to the land, alleging that there were other parties claiming an interest in the league under the same source of title as Magee, asking that they be made parties and compelled to exhibit their titles and claims ; that they be divested of all title which they or either of them have in and to the league

claimed by him, and that he be placed in possession of the six hundred and forty acres of which he had been forcibly dispossessed, and that he be quieted in the possession of the whole survey.

The plaintiffs, Magee and wife, demurred to the answer and cross-bill, "because the same is not sufficient, and they pray that so much of said answer and cross-bill as puts in issue the validity of the patents issued by the Government to plaintiffs be stricken out," &c.

The persons prayed by Chadoin to be made parties appeared and filed numerous exceptions to the sufficiency of the allegations in Chadoin's answer to entitle him to maintain his action against them. And answering, they set out their title under the patents to the Alexanders, and ask that they be quieted in the parcels of land claimed by each, and that title to said tracts be vested absolutely in them as owners, and "for other and further relief."

On the first trial the demurrer of the plaintiff and others made parties to Chadoin's answer and cross-bill was sustained and the cross-bill dismissed ; the injunction perpetuated restraining Chadoin from proceeding in said action before the justice of the peace for possession of said six hundred and forty acres, and quieting plaintiffs in possession of the same.

This judgment was reversed by the Supreme Court. (20 Tex., 476.)

All parties amended, but made respectively similar allegations, and prayed relief, as in previous pleadings.

The case being submitted to a jury, there was a verdict for the defendant. The court entered a decree in favor of Chadoin canceling the patents to the Alexanders, (under which the other parties claimed,) giving him possession of the league claimed.

This judgment was affirmed by the military provisional Supreme Court February 17, 1868. (30 Tex., 644.) The mandate was issued 26th May, and filed 28th May, 1869.

On 21st May, 1869, Nicinda Magee and those made parties by Chadoin instituted a second suit for the land to which they had set up title in the first suit, viz, a league granted to Samuel Alexander and six hundred and forty acres tract granted to J. B. Alexander, and against Thomas Chadoin.

The administrator of Chadoin made himself a party and pleaded *res adjudicata*, setting up the judgment in the former suit.

This defense was sustained by the court below, and the jury was charged that if the land was the same in controversy in the former suit, to find for the defendant. Verdict was rendered for defendant, and plaintiffs below appealed.

The suit was instituted in Lavacca county, and by agreement the venue was changed to Fayette county.

The additional facts necessary are in the opinion.

*William G. Webb*, for appellants.

*Moore & Ledbetter* and *Brown & Timmons*, for appellee.

MOORE, ASSOCIATE JUSTICE.—The controversy between the parties to this suit had its origin almost coeval with the government of the Republic of Texas. The defendant indeed maintains that his title to the land is based upon equities of an earlier date, recognized and secured to him by the Constitution of the Republic. The conflicting claims of these parties and those from whom they are derived have been the subject of constant litigation from the time of its origin, with the exception of occasional intervals of temporary suspensions to the present time. The first suit, to which the present action is the supplement, was twice brought before this court, or rather was once before this court, (20 Tex., 476,) and once before the Supreme Court of the provisional government, appointed by the commanding general of the district of Texas, under authority of what are generally known as the reconstruction laws. (30 Tex.,

644.)   In view of the great length of time during which
the controversy has extended, it is to be regretted on behalf
of the litigant, as well as the public that we are unable
to put a final termination to it as to all the parties involved
in it.

As it is now presented there are but two questions which
we are called upon to decide.   They are, first, can the ap-
pellate power of this court over the judgments of the Dis-
trict Court in favor of the defendants in the second action
to try title to land, brought within one year from the final
decision of the first suit, be invoked and exercised only by
an appeal from such judgment, or may such judgment be
brought to this court for review by writ of error?   Second,
were the plaintiffs in this suit plaintiffs or defendants in
the former suit?

The first of these questions is presented by a motion filed
by the defendant in error, to dismiss the case for want of
jurisdiction of this court to review the judgment of the Dis-
trict Court by virtue of the writ of error on which the case
has been brought here.

The action of ejectment at common law being merely a
possessory action, the judgment in it could not be held to
determine anything more than the plaintiff's right to the
possession of the land; and as the title and right of pos-
session is often in different parties, the title to the land is
not determined by an action of this character until the same
party has been so frequently determined to be entitled to
possession that he must be presumed to have the title, when
a court of equity will enjoin the opposite party from further
disturbing his possession by other actions.   But when the
action of trespass to try title, in which the titles of the par-
ties are put in direct issue, was substituted for ejectment
in which it could be only indirectly determined, notwith-
standing the action of trespass to try title was to "be tried
on its merits conformably to the principles of trials by eject-
ment," (Paschal's Dig., art. 5293,) it might well have

been concluded, if there was nothing in the statute to the
contrary, that the judgment would be just as efficacious and
conclusive upon the parties as in any other character of suit,
and if not satisfactory to the parties it might be reviewed
by this court just as any other judgment of the District
Court.    But lest the owner, who was compelled to resort to
an action to recover his land, might from some technical or
other cause fail to secure his just rights, it was deemed
proper to make the action so far "to conform to the principle
of ejectment," as that a second action might be brought by
the plaintiff within twelve months from the final determ-
ination of the first suit by the Supreme Court.    Lest it
might be inferred from the emphatic language of the origi-
nal act (Paschal's Dig., art. 5298) that "in case the verdict
and judgment again pass against such plaintiff, then such
second verdict and judgment shall be finally conclusive on
the part of every such plaintiff, and he shall be forever
barred and concluded from any further action or suit for
the recovery of the same land, and the right of the defendant
shall be thenceforth finally settled and established against
such plaintiff, his heirs and assigns, excepting," and that
by the exercise of this special privilege conferred by the
statute the plaintiff might have been held to have waived
any right to have such judgment reviewed in the appel-
late court, it was deemed proper to declare that "in case a
second verdict and judgment should pass against the plain-
tiff, nothing contained in the act to which this is a supple-
ment shall be so construed as to prevent an appeal from the
second verdict and judgment." (Paschal's Dig., art. 5299.)
The original statute probably should and would have been
so construed if the supplemental act had not contained this
provision.    We can hardly suppose that the statute in-
tended the judgment in the second suit should be final, if
evidently erroneous, when the plaintiff was given the priv-
ilege of bringing a second suit; it is but reasonable to con-
clude he was entitled to prosecute and have it decided by

the rules and principles of law applicable to other litigants. And if the District Court should fail to do this, the plaintiff's right to have it so conducted and decided might be enforced by the appellate court. The judgment was not intended to be final in the sense that it should not be reviewed and reversed for error, but that no other original suit could be brought by the plaintiff to recover the land on any title which he could then set up. It was to indicate that while two suits of trespass to try title could be brought, the judgment in the second action for the defendant, though it was not so in ejectment, was conclusive.

The language of the supplementary act to which we have referred seems plainly to import, that its purpose is to guard against a construction being given the previous act which should lead to a denial of the right to correct an erroneous judgment of the District Court, and not to prescribe a particular mode by which this should be done. The writ of error has always been treated and regarded by this court, as it was indeed by the Supreme Court of the Republic from its first introduction into our system of jurisprudence, as only another method of bringing up causes for revision as upon appeal. (Lucketts *v.* Townsend, 3 Tex., 128.) The word "appeal," as is said in the case of The Republic *v.* Smith, (Dallam, 408,) is often used to denote the nature of appellate jurisdiction, without regard to the particular mode by which a cause is transmitted from one tribunal to another. And it was, we think, thus used in the clause of the statute to which we have referred. We therefore hold that the judgment can be brought to this court for review by writ of error, and the motion to dismiss must be overruled. We wish it understood, however, that in what is here said, no reference is had to the preceding part of this section of the act where the word "appeal" is also used in referring to the removal of the first suit to the Supreme Court. We are not called upon at this time to construe this part of the act, although the same word is used in both clauses of the sec-

tion. The connection in which they are used and the policy and purpose of the law may show, for ought we can now say, that they were used in a different sense, and should receive a different construction.

To answer to second question presented for our decision by this record requires merely that we shall ascertain the real character of the litigation and the relative positions occupied by parties to it in the first suit. An inspection of the record in that case shows that on the 31st of October, 1850, one of the plaintiffs in the present suit, N. M. Magee, joined by her husband, since dead, brought suit against Thomas Chadoin, defendant's testator, to enjoin an action of forcible entry and detainer brought by Chadoin against her husband, before a justice of the peace, to recover possession of the league of land of which he claimed to have been dispossessed. In her petition, Mrs. Magee denies that she is in possession of any part of the land claimed by Chadoin except six hundred and forty acres, which she described by metes and bounds. To so much of the land as she claims, she deraigns her title, and in addition to her prayer for injunction against said action before the justice of the peace, she prays for judgment quieting her in its possession. Chadoin responded to the matters alleged in the plaintiff's petition, and also set forth at length the facts upon which he charges that he has the superior equitable title to the league of land claimed by him. He also alleges that other parties, who are named in his " answer and cross-bill," as he terms it, claim the remainder of said league under the same character of title with Mrs. Magee, and prays that they be made parties, and required to answer to his said " answer and cross-bill," and that they be compelled to exhibit their several titles and claims, and for a decree divesting them of all title and claim to the survey made for him, and that the same be decreed to him; and also that he be placed in possession of the six hundred and forty acres of

which he had been dispossessed by said Magee, and to be quieted in the possession of his entire survey.

The parties against whom Chadoin prayed process, who, with Mrs. Magee, are the plaintiffs in this suit, or those under whom the plaintiffs claim, appeared and pleaded to the action, setting up titles in severalty. All of them, however, derive their titles from a common source with the original plaintiff. They also pray for judgment quieting their possession. Various amendments to their pleadings were made by all parties during the subsequent progress of the case; to which, however, it is unnecessary for our present purpose to make any special reference.

On the first trial of the case in the District Court, a judgment was rendered against the defendant, Chadoin, dismissing his cross-bill, and, as between the original parties, perpetually enjoining him from prosecuting his said action of forcible entry and detainer, and quieting Mrs. Magee in the land claimed by her.

This judgment was brought by appeal to this court, where it was reversed and the cause remanded, the court saying no ground had been shown for issuing an injunction, and the case might therefore be dismissed; but as the defendant had endeavored to assert a superior right as between himself and other parties brought before the court, it was probably best the case should be remanded, that the question of title might be finally determined. The second trial in the District Court resulted in a judgment in Chadoin's favor, against all of the adverse claimants, for the entire league of land to which he asserts title. This judgment was affirmed by the Supreme Court of the Provisional Government, and a few days before the expiration of twelve months from the day on which the judgment was rendered this suit was instituted.

In bar of the present action, the defendant pleaded the former judgment, and upon the issue presented by this plea the case was decided in his favor. Although the first action

cannot be strictly characterized as an action of trespass to try title, or as being made such by defendant's answer asserting title against the parties therein named, it certainly involved a trial and a determination of the conflicting titles of the different parties claiming the land. It must, therefore, under the previous decisions of this court, be held such action as authorizes the bringing of a second suit by the plaintiff. (Dangerfield *v.* Paschal, 20 Tex., 541; Allen *v.* Stephanes, 18 Tex., 669.) But under the statute, as has long been held by this court, it is only the plaintiff in the first suit who can bring the second action. (Fisk *v.* Miller, 20 Tex., 578.) Though the defendant sets up and relies upon his title, he is not thereby entitled to this privilege. (Lewis *v.* San Antonio, 26 Tex., 319.) Whether, therefore, the plaintiffs can maintain this suit depends upon the fact whether they were plaintiffs in the former suit in the aspects of it in which the title to the land was put in issue.

From what has been said, we think it is very obvious that Mrs. Magee must be regarded and treated as entitled to bring a second action. She brought the original suit. In it, she set up and relied upon her title, and prayed for and obtained a judgment on the first trial against Chadoin. His answer or cross-bill, as against her, did nothing more than to set up and rely upon his adversary title.

But it is equally obvious that the other plaintiffs are not entitled to do so. The right to bring a second suit does not depend upon the mere designation of the parties in the record as plaintiffs or defendants, but upon the true relation which they bear to the case. The plaintiffs in the present case claim several and distinct parcels of land, and we do not perceive that they could have properly brought a joint action, though their titles are derived from a common source. They were brought into the litigation by Chadoin, to answer to his demand claiming the land. It does not appear to have been thought of by any of the parties, while the original case was pending, that these parties were, if

they could have been made, plaintiffs therein. On the first trial, the case was ended as to them by the dismissal of the cross-bill, while it proceeded to judgment on its merits between the Magees and Chadoin.

For the reasons stated, we are of the opinion, that the judgment in the District Court is correct as to all of the plaintiffs in error, except N. M. Magee, and as to her, it is erroneous, and for this error it must be reversed, and it is accordingly so ordered.

REVERSED.