SAN ANTONIO & A. P. RY. CO. v. BLAIR.
(No. 3947.)

(Supreme Court of Texas.   June 27, 1917.)

1. COURTS ⊙⇒42(3)—WRIT OF ERROR—STATUTE
—CONSTITUTIONALITY.

Acts of 1917, c. 76, authorizing the Chief
Justice or any two other Justices of the Su-
preme Court to designate a committee of jus-
tices of the Courts of Civil Appeals to pass
upon petitions to the Supreme Court for writs
of error is constitutional.

[Ed. Note.—For other cases, see Courts, Cent.
Dig. §§ 170, 181–183.]

2. COURTS ⊙⇒42(8)—CONSTITUTION OF.

Since under the statute prescribing that "a
majority of the several courts of Civil Appeals
shall constitute a quorum for the dispatch of
business" a lawful court of Civil Appeals is con-
stituted by two members present and acting,
Acts 1917, c. 76, p. 142, providing for a com-
mittee of justices of the Courts of Civil Ap-
peals to pass upon petitions to the Supreme
Court for writs of error, does not leave courts
from which members of committee are taken
unable to perform their functions.

[Ed. Note.—For other cases, see Courts, Cent.
Dig. §§ 170, 181–183.]

3. COURTS ⊙⇒42(8)—CREATION OF.

Acts 1917, c. 76, authorizing designation of
a committee of justices of Courts of Civil Ap-
peals to pass upon petitions to the Supreme
Court for writs of error, does not create a
court, but simply adds certain duties to those
of justices of courts already existing, to be dis-
charged by them only in their capacity as such.

[Ed. Note.—For other cases, see Courts, Cent.
Dig. §§ 170, 181–183.]

4. COURTS ⊙⇒42(8) — DUTIES OF JUDGE —
POWER OF LEGISLATURE TO CONFER.

Since under Const. art. 5, § 6, the Legisla-
ture may confer generally on Courts of Civil
Appeals other jurisdiction than that specifically
conferred by the Constitution, it may impose
on the justices of them additional judicial du-
ties, such as that of passing on petitions to
the Supreme Court for writs of error, which
have relation simply to a method of appeal of
causes determined by those courts.

[Ed. Note.—For other cases, see Courts, Cent.
Dig. §§ 170, 181–183.]

5. CONSTITUTIONAL LAW ⊙⇒56—POWERS OF
JUDGE—STATUTE.

A judge of a Court of Civil Appeals may,
notwithstanding constitutional provision declar-
ing that the judicial power of the state shall
be vested in the courts named in article 5, §
1, and in such others as may be provided by law,
be empowered to perform a judicial act, such
as that of passing on petitions to the Supreme
Court for writs of error, having direct and
proper relation to the exercise of the jurisdic-
tion of the court of which he is a member,
though in so doing he does not act as a court,
where there is no constitutional provision to the
contrary.

[Ed. Note.—For other cases, see Constitution-
al Law, Cent. Dig. §§ 62–65.]

6. COURTS ⊙⇒43—MANNER OF APPEAL—LEG-
ISLATIVE CONTROL.

Since under Const. art. 5, § 3, the Legisla-
ture may limit and change the appellate juris-
diction of the Supreme Court, the Legislature,
in the absence of any constitutional provision
as to how such jurisdiction may be invoked,
may establish in all its particulars the mode in
which an appeal from the Court of Civil Ap-
peals shall be taken, and in so doing declare that
the authority of determining the right to have

it entertained shall rest in a committee of
judges of the Courts of Civil Appeals.

[Ed. Note.—For other cases, see Courts, Cent.
Dig. §§ 164–170, 181–183.]

7. COURTS ⊙⇒43—WRIT OF ERROR—REGULA-
TION BY LEGISLATURE.

The Legislature which inaugurated the writ
of error practice as the method whereby the ap-
pellate jurisdiction of the Supreme Court may
be acquired, and lodged in it authority of de-
termining the merits of the grounds advanced
for the issuance of the writ, may change that
method.

[Ed. Note.—For other cases, see Courts, Cent.
Dig. §§ 164–170, 181–183.]

8. APPEAL AND ERROR ⊙⇒1—RIGHT OF AP-
PEAL—LEGISLATIVE CONTROL.

Unless granted by the Constitution, the
right of appeal itself is but a privilege, not an
irrevocable right, and may be restricted, chang-
ed, and regulated by the Legislature at discre-
tion.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 1–4.]

9. COURTS ⊙⇒43—RIGHT OF APPEAL—DETER-
MINATION—POWER TO CONFER.

The Legislature has power to give to the
Courts of Civil Appeals the authority of de-
termining when an appeal from their judgments
shall lie.

[Ed. Note.—For other cases, see Courts, Cent.
Dig. §§ 164–170, 181–183.]

10. COURTS ⊙⇒43—APPELLATE JURISDICTION—
LEGISLATIVE CONTROL.

The manner or mode of acquiring jurisdic-
tion is essentially a matter of legislative con-
trol in the absence of some express constitu-
tional direction on the subject.

[Ed. Note.—For other cases, see Courts, Cent.
Dig. §§ 164–170, 181–183.]

11. CONSTITUTIONAL LAW ⊙⇒48 — VALIDITY
OF STATUTE.

A statute is to be held valid unless forbidden
by the Constitution, either in express terms or
by necessary implication.

[Ed. Note.—For other cases, see Constitutional
Law, Cent. Dig. § 46; Statutes, Cent. Dig. § 56.]

Hawkins, J., dissenting.

Action by H. A. Blair against the San
Antonio & Aransas Pass Railway Company.
Plaintiff died during its pendency, and the
action was revived in the name of Mrs.
Lula Blair, administratrix.   From a judg-
ment for plaintiff, defendant appealed to the
Court of Civil Appeals, where the judgment
was affirmed.   184 S. W. 566.   Defendant
brought error.   The Supreme Court referred
the petition to a committee of judges of the
Court of Civil Appeals under Acts 1917, c.
76, which refused the writ.   Motion of de-
fendant for consideration of petition by Su-
preme Court overruled.

See, also, 173 S. W. 1186.

Boyle & Storey, of San Antonio, William-
son & Klingemann, of Karnes City, and Proc-
tor, Vandenberge, Crain & Mitchell, of Vic-
toria, for appellant.   C. C. Harris and Arnold,
Cozby & Peyton, all of San Antonio, for ap-
pellee.

PHILLIPS, C. J.   This motion assails the
constitutionality of the recent act of the Leg-
islature.   (Acts of 1917, chapter 76, page

142), authorizing the Chief Justice of the Supreme Court, or any two of the Justices thereof, to designate a committee of three of the Justices of the Courts of Civil Appeals, empowered to pass upon petitions for writs of error seeking a review of causes by the Supreme Court, except in certain classes of cases, referred to them by the Supreme Court, and grant or refuse the writ, or dismiss the petition, in accordance with the practice of the Supreme Court. It is urged that on account of the invalidity of the act we should consider the petition for writ of error in the case, it having been previously by us referred to the Committee of Judges and passed upon by them adversely to the plaintiff in error. A number of similar motions have been filed in other cases.

[1] The act became immediately effective upon its approval by the Governor. Its administration was inaugurated by the court's designation, on March 28, 1917, of three Justices selected from different Courts of Civil Appeals to serve in the capacity authorized until its further orders, and the reference to them of pending petitions for writs of error, except in the classes of cases exempted from the act's operation. The act was set in motion because of the court's view that it was constitutional and valid, the various grounds urged against it in all these motions having been fully considered. Had we not determined it to be a valid act, we would not have proceeded under it. It was intended, therefore, that our action in inaugurating it should serve as in effect a judgment in respect to its validity, and should be so understood.

In view of these motions it is but proper, however, that we should state the grounds which in our opinion sustain the act. We have not the time now, in the closing hours of the term, nor the inclination to pursue the subject at length. The validity of the act may be established upon principles so plain and unmistakable, that any extended discussion of the question is in our judgment unnecessary,

It should be stated that Mr. Justice Hawkins did not agree with the majority of the court in their determination of the validity of the act. He accordingly dissented from the court's action in proceeding under it, announcing that he would later file an opinion expressing his views. He has not completed his opinion, but will file it when finished. Because of the court's previous settlement of the question, he concurs in its present action in overruling this and other like motions, referring, however, to his opinion, to be filed, for a statement of his position.

The act, as is revealed upon its face, had for its purpose relieving this court, for a season, from the necessity of reviewing the large number of petitions for writs of error presented to it, so as to enable it, during such period, to devote its time to its cause docket and bring an end to its congested condition. For a number of years the petitions for writs of error filed annually in the court, seeking revision of judgments of the Courts of Civil Appeals, have been in excess of 500 in number, gradually increasing each year. Each requires deliberate and accurate consideration. To keep abreast of them, practically the whole time of the court has been required throughout each term. The result was an enforced neglect of causes in which writs of error had been granted and which were pending for submission and decision. Postponement of the decision of those causes by the condition thus brought about amounted in many instances to a denial of justice. By giving the petitions for writs of error its constant attention, the court had been able to keep that docket fairly cleared. But this was true only because it had given them nearly its whole time in each term. Had its time been given in equal degree to the decision of pending causes, the congested condition of the latter docket might have been obviated; but it recognized that in that event the petitions for writs of error would accumulate so rapidly as to result in a similar congestion in respect to them.

It is sometimes overlooked that with the inauguration of the Courts of Civil Appeals as a part of our judicial system, the jurisdiction of the Supreme Court was fixed in the Constitution for the review, originally, of causes determined by but three of such courts, and only three of those courts were originally established. The Courts of Civil Appeals have, however, been trebled in number. There are now nine of them. In the meantime, the jurisdiction of the Supreme Court has remained substantially unchanged, —to no appreciable extent diminished in respect to the time necessarily required for its proper examination of causes presented to it on petition for writ of error. With the jurisdiction of the Supreme Court, in other words, originally adjusted so as to enable it to properly review causes emanating from but three appellate courts, it has of late years, with substantially no change in its jurisdiction, been charged with the duty of reviewing causes emanating from nine appellate courts. It was the realization of this that has caused it during this latter period to chiefly give its time to the consideration of causes presented on petition for writ of error in an effort to dispose of them as currently filed, leaving it, as already stated, no sufficient time for the decision of pending causes.

This was a condition imperatively demanding relief in the interest of an efficient administration of the law. To relieve it in a practical and inexpensive way by making use of the existing judicial machinery of the State was the design of this act. The thought of its framers doubtless was that under its operation for a short period the Supreme Court could clear its docket and be in position to resume the consideration of

cases on petition for writ of error. For that reason the operation of the act is in effect limited to the·time necessary for that purpose.

The invalidity of the act is asserted both as it affects the duties and powers of the Courts of Civil Appeals, and as it relates to the exercise by the Supreme Court of the jurisdiction with which it is invested by law.

The effect of the act upon the Courts of Civil Appeals and their Justices will be first considered.

[2] It is claimed that the use for the purposes of the act of three Justices from three different Courts of Civil Appeals will leave the courts of which they are members unable to perform their functions. This question was settled in City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960. It was there held that under the statute prescribing that "a majority of the several Courts of Civil Appeals shall constitute a quorum for the dispatch of business," a lawful Court of Civil Appeals is constituted by two members present and acting.

[3, 4] The act, as it plainly shows, does not create a court. It simply defines and adds certain duties to those of the Justices of the Courts of Civil Appeals already existing. The duties thus added are those which the Justices are to discharge as Justices of such courts and only in their capacity as such. The Constitution—section 6 of article 5,—after defining the jurisdiction of the Courts of Civil Appeals, provides that "said courts shall have such other jurisdiction, original and appellate, as may be prescribed by law." Under this provision the Legislature has without challenge conferred other jurisdiction upon those courts, namely, jurisdiction of causes not arising within their districts, but transferred to them under order of the Supreme Court from other districts. If the Legislature may bestow, generally, upon the Courts of Civil Appeals other jurisdiction than that specifically conferred by the Constitution, no sound reason can be advanced for denying it the right to equally impose upon the Justices of them additional judicial duties which have relation simply to a method of appeal of causes determined by those courts.

[5] The Constitution declares that the judicial power of the State shall be vested in the courts named in section 1 of article 5 and in such other courts as may be provided by law. But this does not mean that no judge may be empowered by law to perform a judicial act having direct and proper relation to the exercise of the jurisdiction of the court of which he is a member. At an early time it was recognized that rights would suffer if judges were deprived of all authority to act except as courts. As the result, their exercise of judicial power in vacation and at chambers became an established practice. The writ of error has always been treated by this court as but a mode of securing revision of causes as upon appeal. Luckett v. Townsend, 3 Tex. 119, 49 Am. Dec. 723; Magee v. Chadoin, 44 Tex. 488. Granting that the allowance of the writ involves the exercise of judicial power, where is the constitutional provision which denies to the Justices of the Courts of Civil Appeals the authority to allow an appeal from those courts to the Supreme Court? Not only is no such inhibition to be found, but the Constitution is utterly silent in respect to any method to be employed for the obtaining of a review by the Supreme Court of causes determined by those courts. Nothing is better settled than that in the absence of constitutional provision to the contrary, the Legislature may confer upon judges the authority to perform judicial acts necessary to a due administration of the law. As related to the revision of causes, a familiar instance of the exercise of such power by a judge, as distinguished from a court, is that authorized by the Federal statute which empowers the Chief Justice of a State Supreme Court to grant a writ of error in a certain class of cases as a means for their review by the United States Supreme Court. See Gleason v. Florida, 9 Wall. 779, 19 L. Ed. 730; Butler v. Gage, 138 U. S. 52, 11 Sup. Ct. 235, 34 L. Ed. 869. No doubt has ever existed, as we are aware, as to the authority of the Chief Justice of a State Supreme Court to so allow the writ, notwithstanding provisions of State constitutions which vest in the State Supreme Court, as distinguished from its judges, the judicial power which they are to exercise. His act in such instances is valid simply for the reason that it is the exertion of a part of the judicial power reposed in the court, by a constituent member of the court acting for that purpose in a capacity not forbidden by the organic law of the State. If such a power may be constitutionally exercised by a judge of the Supreme Court of a State as applied to causes reviewable by the United States Supreme Court, it is difficult to perceive why it may not be also validly exerted by Justices of the Courts of Civil Appeals as applied to causes not final in those courts.

[6] Attention has already been directed to the fact that the Constitution has made no provision whatever in respect to the method by which the appellate jurisdiction of the Supreme Court is obtained over causes which it is empowered to review. It is the absence of any such constitutional provision that determines the validity of this act. The Constitution merely declares that its appellate jurisdiction "shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction, under such restrictions and regulations as the Legislature may prescribe." Article 5, section 3. Not only is no method provided by which its appellate jurisdiction may be called into exercise, but it is to be further noted that the Constitution does not irrevocably define:

and fix any certain appellate jurisdiction for the court, except that it "shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction." A subsequent part of section 3 in terms conferred upon it appellate jurisdiction over three certain kinds of cases, but that jurisdiction was to subsist only "until otherwise provided by law." To restrict is to limit, as said by Chief Justice Gaines in Maddox v. Covington, 87 Tex. 454, 29 S. W. 465. The clause, "under such restrictions and regulations as the Legislature may prescribe," means under "such limitations and regulations" as that body may enjoin. Hence, it is within the power of the Legislature to limit and to change the appellate jurisdiction of the court. Maddox v. Covington.

It would seem as scarcely open to debate that if the Legislature is thus authorized to limit and change the jurisdiction itself of the court,—its very power to hear and determine causes, it is equally competent for it to establish in all its particulars the mode under which its jurisdiction is to be invoked and by the observance of which it may be obtained.

The Constitution will be searched in vain for any provision which ordains the method by which a cause decided by a Court of Civil Appeals shall gain entrance into the Supreme Court; or which gives to the Supreme Court the authority of determining its right to entrance there. Neither the right of appeal to the Supreme Court nor the manner of its exercise is mentioned in the Constitution.

With this true, it is not to be questioned that the Legislature has the authority to establish the manner in which the appeal shall be taken, and, in doing so, declare where shall rest the authority of determining the right to have it entertained. Titus v. Latimer, 5 Tex. 433.

To fix any given mode for an appeal is but to prescribe a regulation by means of which jurisdiction to hear the appeal may be acquired. To vest in the appellate court itself, or in some other authority, a discretionary power of deciding whether the appeal shall lie, is equally only a regulation of the manner in which the appeal is to be taken,—a part of the mode enjoined for the appeal, and to be observed if the appellate jurisdiction is to be lawfully obtained. With the Constitution declaring that the Supreme Court shall possess and exercise appellate jurisdiction only under such limitations and regulations as the Legislature may prescribe, to do either, therefore, is only to do that which the Legislature is empowered to do by express provision of that instrument.

[7-9] The Legislature inaugurated the writ of error practice as the method whereby the appellate jurisdiction of the Supreme Court might be acquired. It also lodged in the Supreme Court the authority of determining the merits of the grounds advanced for the issuance of the writ and, hence, when it should be allowed. But there is no vested right in that mode of appeal. These provisions of the law did not come from the Constitution. They are the creatures of the Legislature. What the Legislature may create, it may alter. Unless granted by the Constitution, the right of appeal itself is but a privilege; it is not an irrevocable right. It pertains merely to the remedy, and may be modified by the Legislature at discretion. If, for illustration, instead of adopting the writ of error practice in respect to the review by the Supreme Court of causes from the Courts of Civil Appeals, the Legislature had established the giving of bond, with the approval of which the Supreme Court should have nothing to do, as the mode of appeal from those courts, it cannot be doubted that such an act would have been valid. With the right of appeal in such cases not a constitutional right, but a creation purely of the statute law and subject to the limitations of that law, with it thus pertaining merely to the remedy which the Legislature has full authority to restrict, to change and to regulate, neither can it be doubted that it would have been competent, as a mere question of legislative power, for the Legislature to have given to the Courts of Civil Appeals, themselves, the authority of determining when an appeal from their judgments should lie.

Such an authority is not novel in the legal procedure of the country, whatever may be the divergence of views in respect to the wisdom of it. In a number of jurisdictions the right of appeal has had a like restriction imposed upon it. In 3 Corpus Juris, page 1080 (notes), will be found a collection of cases instancing such a limitation upon the right as found in the legislation of different states. In Tennessee, for illustration, it was provided by the Code at the time of the decision of Sigler v. Vaughn (1883) 11 Lea (Tenn.) 131, that it was within the discretion of the chancellor to grant an appeal from the overruling of a demurrer by the chancery court. In Alabama, it was likewise ruled in Griffin v. Bank, 9 Ala. 201, that an appeal from an interlocutory decree dissolving an injunction in the chancery court, must be taken before the chancellor. In Connecticut, it was determined in Montville Street Railway Co. v. New London, etc., Co., 68 Conn. 418, 36 Atl. 811, that an appeal from the decision of a single judge of the superior court, must be allowed by him.

[10] There is, of course, an obvious difference between jurisdiction,—the power of a court to hear and determine causes, and the doing of those things necessary to call that power into play. To confer jurisdiction upon a court is not to give it authority to determine the mode of resort to its jurisdiction, or the power of deciding how, when, and in what manner its jurisdiction may be obtained. Some means must be provided as the instrumentality of bringing the cause under

the power of the court in order for the court to have and exert power over it. Such means are purely remedial in their nature. They pertain merely to the manner or mode by which jurisdiction is acquired, not to its exercise after it is acquired. They are essentially matters of legislative control in the absence of some express constitutional direction upon the subject. This was clearly recognized by the court in Schleicher v. Runge, 90 Tex. 456, 39 S. W. 279, where it was said:

"Under amended section 3 of article 5 of the Constitution, as we have seen, this court is to exercise its appellate jurisdiction under such restrictions and regulations as the Legislature may prescribe. When, therefore, the Legislature prescribed that the petition for the writ of error should be filed with the clerk of the Court of Civil Appeals within thirty days from the overruling of the motion for a rehearing in that court, we think that it was intended that a compliance with that requirement should be as a condition precedent to exercise of the jurisdiction."

[11] An act of the Legislature is not to be lightly struck down. It is to be held valid unless forbidden by the superior law of the Constitution either in express terms or by necessary implication. As before stated, the Constitution does not purport to deal with the question of the regulation of appeals to this court from the Courts of Civil Appeals except in its remission of the entire subject to the legislative authority. The act is in our opinion a valid act, and the motion is accordingly overruled.

HAWKINS, J., dissents. See 196 S. W. 1153.