WARREN et al. v. JOHNSON et al.  (No. 7758.)

(Court of Civil Appeals of Texas. Galveston.
Nov. 20, 1919. Rehearing. Denied.
Dec. 18, 1919.)

1. CHATTEL MORTGAGES ⬤⟿113—MORTGAGE TO
INDEMNIFY SURETY CONSTRUED TO AUTHOR-
IZE SALE ONLY IN CASE OF JUDGMENT NOT
APPEALED FROM.

A chattel mortgage, executed to indemnify
a surety on a claimant's bond authorizing the
trustee to take possession and sell the property
if judgment should be rendered against the
mortgagor and he should not appeal, and pro-
viding, in case of an appeal the mortgage should
remain in force, and if judgment should be ren-
dered against the surety the same remedy
should apply, and providing that the surety's
remedies and rights should be fully matured
without it being required to first pay any judg-
ment, costs, and expenses, did not authorize a
seizure and sale in case of a judgment against
the claimant from which he appealed.

2. CHATTEL MORTAGAGES ⬤⟿113—MORTGAGE,
AUTHORIZING SALE IN CASE OF JUDGMENT
UNLESS "APPEAL" WAS TAKEN, INCLUDED
WRIT OF ERROR.

A chattel mortgage to indemnify the surety
on a claimant's bond, authorizing a sale of the
property if judgment was rendered against the
mortgagor and no appeal taken, used the word
"appeal" as meaning a taking of the case to
a higher court by any authorized method, in-
cluding a writ of error.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Appeal.]

Appeal from District Court, Harris Coun-
ty; Hugh M. Potter, Special Judge.

Suit by Mrs. J. B. Warren and husband
against S. Johnson and others. Judgment
for defendants, and plaintiffs appeal. Re-
versed and remanded.

A. C. Van Velzer, of Houston, for appel-
lants.

A. B. Wilson and E. T. Chew, both of Hous-
ton, for appellees.

PLEASANTS, C. J. This suit was brought
by Mrs. J. B. Warren, joined by her hus-
band, against Lion Bonding & Surety Com-
pany, J. A. Allen, R. E. Goree, A. B. Wilson,
A. O. Blackwell, John Boone, George Khul-
man, Sid Westheimer, and Ludwick Scharck,
to recover damages for the alleged wrong-
ful conversion by defendants of an automo-
bile belonging to plaintiff, Mrs. Warren.

The petition alleges that in a suit brought
by the Atlas Construction Company on April
2, 1915, against one Steve Johnson, an attach-
ment sued out by the plaintiff in said suit
was levied upon the automobile in question
as the property of the defendant Johnson, and
that thereafter, on May 5, 1915, J. B. Warren
filed a claimant's oath and bond for trial of

the right of property in said automobile, the
Lion Bonding & Surety Company being the
surety upon said bond; that on November
24, 1915, the Atlas'Construction Company re-
covered judgment in the suit against John-
son, with foreclosure of its attachment lien,
and also recovered judgment in the trial of
the 'right of property proceedings against J.
B. Warren and the Lion Bonding & Surety
Company, the surety on his claimant's bond,
for the sum of $550 and all costs of said pro-
ceedings.

It is further alleged that before the judg-
ments in the suits before mentioned were
rendered, the matter in controversy between
the Atlas Construction Company and the
said defendant Johnson had been fully set-
tled, and Johnson released from all claims
and demands by said company, and that the
purpose and object of the parties (defend-
ants here) in continuing the prosecution of
said suits and obtaining judgments therein
"was not to reach the said Johnson, but to
proceed against and reach the said Warren,
and to convert the said automobile to the use
of the defendants herein, their agents and at-
torneys, by taking 'snap' judgments."

The petition contains allegations of fraud
and willful wrong on the part of the defend-
ants, which for the purposes of this opinion
it is unnecessary to set out.

It is also alleged that plaintiff Mrs. Warren
purchased the automobile from her husband
on June 20, 1915. The judgment against
Warren and the Lion Bonding & Surety Com-
pany, the surety on his claimant's bond, was
brought to this court for review by writ of
error, and was set aside by the judgment of
this court. No execution was levied upon
the judgment, the only execution issued hav-
ing been returned "unsatisfied by order of
the plaintiff." The Lion Bonding & Surety
Company did not pay the judgment rendered
against it as surety on the claimant's bond,
or any part of it. After this judgment was
rendered against it, and before the writ of
error was sued out therefrom by Warren, it
brought suit by its trustee, Allen, against
Warren, and sued out an attachment which
was levied upon the car. This attachment
was quashed. Thereafter it sued out two
writs of sequestration in said suit, both of
which were also quashed, after which it dis-
missed its suit.

The defendant Boone, who in his official
capacity as constable held possession of said
car under said writs of attachment and se-
questration, refused upon the quashing of
the writs and the dismissal of the suit to de-
liver the car to plaintiff Warren, but deliver-
ed it to the Lion Bonding & Surety Company
upon its execution and delivery to him of a
bond of indemnity. Having obtained posses-
sion of the car in this manner, said company

sold it for $100, and appropriated the proceeds to the payment of costs and attorney's fees incurred in the litigation before mentioned.

Plaintiffs in this suit alleged that the value of the car was $300. In addition to this value they claim actual damages in the sum of $3,600 as the value of the use of the car, and exemplary damages in the sum of $5,000. They also claim $500 as attorney's fees.

The defendants answered by general and special exceptions and general denial, and further defended upon the ground that the Lion Bonding & Surety Company was expressly authorized by the terms of a chattel mortgage executed and delivered by Warren to J. A. Allen, trustee, to indemnify said company, as his surety upon his claimant's bond, "to take possession of the automobile and sell it at public or private sale and apply the proceeds to the payment of any court costs, expenses, and attorney's fees for which Lion Bonding & Surety Company was liable, whether paid or not, and authorized the sale of the automobile and application of proceeds without payment in advance by Lion Bonding & Surety Company of any court costs, expenses, and attorney's fees, which such court costs, expenses, and attorney's fees had been incurred by Lion Bonding & Surety Company, or for which it was liable; that said automobile was sold under the terms of said chattel mortgage for $100, and the proceeds applied to the payment of court costs, attorney's fees, and expenses, leaving a balance due defendant surety company of $150."

The trial court held that the surety company had the right to take possession of the car under the terms of the application for the bond and the indemnity contract and sell it, applying the proceeds to court costs, attorney's fees, storage, etc., incurred by it for its protection, and the court instructed the jury to return a verdict for defendants. Under appropriate assignments of error appellant assails this ruling of the trial court.

The application made by Warren to Lion Bonding & Surety Company to execute as surety his claimant's bond contains the following provision:

"The indemnitor will perform all conditions of said bond on the part of the indemnitor to be performed and will at all times indemnify and keep indemnified the surety and hold and save it harmless from any and all damages, loss, costs, charges and expenses of any kind or nature whatsoever which it may at any time sustain or incur by reason of its suretyship, and will pay over to the surety, its successors or assigns, all sums of money which may be paid by or for the surety or which it may become liable to pay by reason of such suretyship. Council and attorney's fees, whether incurred under retainer or salary, or any other expense incurred by the surety at any time, in any litigation, investigation, collection of premiums due on this bond or in seeking its discharge as surety shall be deemed a proper charge or expense within the meaning of the preceding sentence, and the surety is hereby authorized to prove such costs or expenses in any action or proceeding against the indemnitor, and include the same in any judgment or decree, which may be recovered against said indemnitor, and the company may bring as many actions hereupon as there are defendants, the recovery of each judgment not to be a bar to the recovery of any other judgment. That in any accounting which may be had between the indemnitor and the surety, the surety shall be entitled to credit for any and all disbursements in and about matters herein contemplated made by it.

"That the surety shall at its option have and may exercise in the indemnitor's name or otherwise, any and all rights and privileges which the indemnitor has or may have in the premises.

"That the indemnitor hereby further agrees if any suit is brought on the bond herein applied for, to permit said company to employ its own counsel or attorney to defend such suit and to repay to said company the fee of said counsel or attorney and all other costs and expenses to which said company may be put in defense of said suit."

The conditions of the chattel mortgage executed by Warren for the purpose of indemnifying his surety are as follows:

"In the event judgment should be rendered against me in the above numbered and entitled cause upon said claimant's bond, in said court, and I should not appeal said cause within the time allowed by the statutes of the state of Texas, now in force, then the said J. A. Allen, or his successors hereinafter named, is hereby authorized and directed to get possession of said above-described property, and sell the same at either public or private sale and apply the proceeds to the payment of any judgment that may be rendered against me in the above numbered and entitled cause, upon said claimant's bond, and any and all costs of court and attorney's fees which may be incurred by the said J. A. Allen or his successors in taking possession of and selling said automobile and applying the proceeds to the payment of said judgment; and in the event said automobile shall not bring sufficient money to pay off said judgment, interests, costs and attorney's fees, and any and all other expenses incurred by the said J. A. Allen, or his successors, I hereby agree and obligate myself to pay any balance.

"In the event I shall appeal from the decision of the court upon the trial of the above numbered and entitled cause, this chattel mortgage shall remain in full force and effect, and in the event any judgment shall be rendered against Lion Bonding & Surety Company upon the claimant's bond by the Court of Civil Appeals or Supreme Court. the remedy as herein provided in the foregoing paragraph shall apply.

"It is hereby stipulated and agreed that said above-described property may be sold to pay any judgment, interest, court costs and attorney's fees and other expenses, without Lion Bonding & Surety Company first having paid the same. it being hereby expressly understood and agreed that the remedies and rights

of Lion Bonding & Surety Company shall be deemed fully matured, and its right of action shall not depend upon the payment of it of any sums of money hereunder.

"It is hereby further stipulated and agreed that this chattel mortgage together with my application to Lion Bonding & Surety Company for the claimant's bond, upon which Lion Bonding & Surety Company is surety, shall be and form one contract and agreement, and that all of the rights and remedies provided for in the application shall be in no wise impaired, changed, altered or varied by the provisions contained in this chattel mortgage, unless Lion Bonding & Surety Company shall elect to pursue the remedies herein prescribed and given it in lieu of any remedies and rights given it in said application, and that the Lion Bonding & Surety Company may adopt any remedies herein given or contained in the application as to it may seem most suitable and adaptable to the preservation and securing of its rights and remedies to save it from any loss, damage, court costs, expenses or injury."

[1] We cannot agree with the trial court in the construction placed by it upon the contract of indemnity. The authority given the trustee to take possession of the automobile and sell it for the purpose of indemnifying the Lion Bonding & Surety Company is given only in event judgment should be rendered against the claimant on his claimant's bond, and he should fail to appeal therefrom, and this limitation upon the right of seizure by the trustee is again expressed in the provision of the contract which declares that in event an appeal is taken the mortgage shall continue in full force and effect for the protection of the surety against any judgment that may be rendered by the appellate court.

There is nothing in the succeeding clause of the contract, which authorizes the sale of the property to protect the surety against liability on the claimant's bond and the costs and expenses incurred by it without its having first paid same, which in any way affects the plain provision that the right of arbitrary seizure and sale can only be exercised in event there is a judgment against the claimant on the bond and no appeal is taken therefrom.

The undisputed evidence shows that a writ of error was sued out by appellant from such judgment within the time allowed by law, and that the judgment was reversed by the appellate court.

[2] The only question we think that could arise upon the construction of this contract is whether in the clause "appeal said cause within the time allowed by the statutes now in force," the word "appeal" was used in its restricted technical sense, and does not include taking the cause to a higher court by writ of error. In its ordinary sense an appeal of a case means taking it to a higher court by any authorized method. Our statutes give the right of appeal by writ of error,

and also by the more direct method of simply giving notice in the trial court and filing an appeal bond within a prescribed time thereafter. Either method of procedure is an appeal of the cause. Our Supreme Court and appellate courts have held in a number of cases that a writ of error is but one of the methods of appeal, and the word "appeal," when used in our statutes, unless by the context and evident purpose and intent of the act is intended as designating the specific method of taking a case from a lower to a higher court designated in the statute as appealing the case, includes the method of appeal by writ of error. Luckett v. Townsend, 3 Tex. 120, 49 Am. Dec. 723; Green v. Martin, 43 Tex. 653; Magee v. Chadoin, 44 Tex. 488; Railway Co. v. Lacy, 7 Tex. Civ. App. 63, 26 S. W. 413; La. & Rio Grande Canal Co. v. Quinn, 160 S. W. 151; Trammell v. Rosen, 165 S. W. 518.

We think the word "appeal" in this contract means only the taking of the cause to the appellate court for review without reference to the method by which the appeal is taken.

The evidence raised the issue of damage as claimed by appellants, and the case should have gone to the jury under proper instructions.

It follows from these conclusions that the judgment should be reversed and the cause remanded; and it has been so ordered.

Reversed and remanded.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes