Appeal and error ⬅️44—No writ of error lies to Supreme Court where judgments of Courts of Civil Appeals final.

Where judgments of the Courts of Civil Appeals are made final by Rev. St. 1911, art. 1591, as judgments in cases within the jurisdiction of the county courts, no writ of error lies to the Supreme Court under article 1521, as amended by Acts 35th Leg. c. 75 (Vernon's Ann. Civ. St. Supp. 1918, art. 1521).

On motion for rehearing at application for writ of error, previously dismissed.

C. C. Huff, A. H. McKnight, and J. M. Chambers, all of Dallas, and Tyler, Hubbard & Tyler, of Belton, for applicant.

Thomas, Milam & Touchstone, of Dallas, and M. E. Monteith, of Belton, for respondent Gregory.

HAWKINS, J. The application of plaintiff in error for a writ of error was dismissed by this court for want of jurisdiction; the suit being one which properly might have originated in the county court. Dismissal resulted from an application of the views expressed by a majority of this court in Cole v. State, 106 Tex. 472, 170 S. W. 1036, to the effect that R. S. art. 1521, as amended by the Thirty-Third Legislature (Gen. Laws 1913, c. 55, p. 107 [Vernon's Sayles' Ann. Civ. St. 1914, art. 1521]), was controlled by R. S. 1591, a much earlier statute, which declares final the appellate jurisdiction of Courts of Civil Appeals in certain enumerated classes of cases, including "any civil case appealed from a county court, or from a district court when, under the Constitution, a county court would have had original or appellate jurisdiction to try it, except in probate matters and in cases involving the revenue laws of the state or the validity of a statute," and that consequently cases within the potential jurisdiction of the county court were not within the appellate jurisdiction of the Supreme Court.

An analogous situation is presented by our present jurisdictional statute, article 1521, as amended by General Laws 1917, c. 75, p. 140 (Vernon's Ann. Civ. St. Supp. 1918, art. 1521).

It is true that I have never concurred in the above-mentioned construction and application of article 1521, as amended in 1913. McFarland v. Hammond, 106 Tex. 579, 173 S. W. 645; Spence v. Fenchler, 107 Tex. 443, 180 S. W. 597. Nevertheless the rule of construction announced in Cole v. State seems to have become the settled doctrine controlling our practice, and recently has been reaffirmed by action of my present Associates.

Moreover, and whether said rule of construction as applied to said amendment of 1913 was sound and correct or not, I am constrained to believe that under general and well-settled and sound rules of statutory construction it should now be held that, inasmuch as the decision in Cole v. State was rendered in 1914, long prior to the enactment of our said present jurisdictional statute, and had been applied thereafter by this court in a great number of cases and continuously down to the last amendment of said article 1521, effective July 1, 1917, that article, as it now stands, should be construed and applied in the light of said former decision and practice. Under the circumstances, had the Legislature intended otherwise, it rationally would have employed different or additional words in said act of 1917, and would have repealed or amended, expressly, said older statute (article 1591), which upon its face does appear to conflict with the later provisions of article 1521 as it now stands.

It follows that the motion for rehearing should be overruled.

The foregoing is presented merely as an expression of my individual views.

## In re ORDERS IN CHAMBERS.

(Supreme Court of Texas. Feb. 2, 1920.)

Courts ⬅️82—Supreme Court can amend bar admission rules without formal session.

The Supreme Court can make an order of court amending the rules for admission to the bar by adding to the list of law schools whose graduates are exempt from examination without announcing the order from the bench in open court.

Hawkins, J., dissenting.

Order by the Supreme Court adding schools to the list of those whose graduates are exempt from the requirement of examination or admission to the bar.

Dissenting Opinion and Protest.

HAWKINS, J. Respectfully, yet earnestly, I disclaim all responsibility, in the past

and for the future, for treating as orders of our Supreme Court orders made and signed merely by justices of that court in chambers only, and not "pronounced in open court." Article 1550, R. S. (Act Nov. 10, 1846, p. 134; Pas. Dig. 6417).

In the minutes of the proceedings of our Supreme Court on January 28, 1920, under that date, appears an entry as follows:

#### "Order of Court.

"The board of legal examiners having on this day recommended to the Supreme Court that to the list of law schools whose graduates shall be exempt from the bar examination as heretofore prescribed by the court under the rules promulgated October 6, 1919, there be added the Law School of Georgetown University, Washington, D. C., and as to holders from Texas of Rhodes scholarships the Law Colleges of Oxford University, England;

"It is ordered by the court, effective as of this date, that to such list of law schools there be added the Law school of Georgetown University, Washington, D. C., and as to holders of Rhodes scholarships from any of the states of the United States, the Law Colleges of Oxford University, England; that is to say, any one attending those colleges in virtue of a Rhodes scholarship who is a graduate thereof and was at the time of his attendance and graduation a resident of any of the states of the United States shall be exempt from the bar examination.

"This January 26th, 1920.
"Nelson Phillips,
"Chief Justice.
"Thos. B. Greenwood,
"Associate Justice.

"Upon grounds of invalidity, Associate Justice Hawkins dissents from the order of exemption of January 26th, and from so much of the order of this date as seeks to make said former order effective prior to this date, and later will file statement of his views."

The wise and timely purposes of the "order" of January 26th, apparent upon its face, including the clause "effective as of this date," had my instant and full approval and support. However, my suggestion to those who signed said order that we repair forthwith to our courtroom and hold a special session of said court and then and there formally make, and from the bench announce, such order of exemption, making it effective immediately (said board then being in quarterly session), was overruled; and thereupon, on January 26th, in chambers, and not "in open court," they signed the amendatory draft of the "order" of exemption, undertaking thereby to give it validity, as an order of the Supreme Court. No session of that court was held on that day, and neither said "order" of exemption, nor my objection thereto, has ever been announced from the bench "in open court." Both were incorporated in our minutes of January 28th pursuant to informal instructions to

our clerk. Meanwhile, and very naturally, said order of exemption had been treated and acted upon by said board and by our clerk as being in full force and effect as an order of said court, having the force of law, from and after said signing in chambers; and in pursuance thereof law licenses had been issued putting each of such additional exemptions into actual operation.

The grounds of my objections and protest are as follows:

First. No power or authority conferred upon the Supreme Court as a court by our Constitution or laws, or both, can be exerted or exercised validly otherwise than by a judgment, or decree, or order of the court "pronounced in open court." Justices of the Supreme Court, acting individually, though conjointly, in chambers, and not in open court, are not a court, and consequently are wholly destitute of power and authority so to amend rules theretofore duly made by our Supreme Court as a court, and announced from the bench "in open court" and duly promulgated, for the control and direction of the state board of legal examiners, pursuant to provisions of General Laws of 1919, c. 38, p. 63.

Power to make and to change such rules is a purely statutory power, differing in that respect from the power to make and change rules for the courts (Const. Tex. art. 5, § 25), and is vested by said statute in "the Supreme Court" alone. That power, unlike certain important powers with which our Constitution and certain statutes deal, is not given to any one or more *justices* of that court, to be exercised by them separately or conjointly, *otherwise than as a court*, in either vacation or term time.

In said act of 1919, creating said board and defining its duties relative to examinations for license to practice law, the Legislature declared:

"The Supreme Court is hereby authorized and empowered to make any and all rules and regulations which, in its judgment, may be proper and expedient to govern eligibility for such examination," etc. Section 3.

"It is hereby declared to be the duty of the Supreme Court, by general order to that effect, to exempt graduates of such law schools as may be approved by the Supreme Court from taking any examination as to prelegal or legal studies and attainments," etc. Section 6.

Not a suggestion is there anywhere in our Constitution or statutes that the stated power may be exercised except by "the Supreme Court" as a court; and all such exemptions, by even that constitutional tribunal, are required by said statute to be made "by general order" of that "court."

It is true that the statute does not in express terms provide that such "general order" shall be made during a constitutional term of that court; but that much is fair-

ly implied in view of other provisions of our Constitution and laws. Surely no one will be heard to say that the stated power could be exercised validly by that "court" during vacation required by the Constitution; yet, if the power to amend the rules duly prescribed by that court rests and abides in the justices, as well as in the court itself, it would be difficult, it seems to me, to assign a reason which logically would deny them the right to exercise that power during such vacation. Likewise it is true that no statute requires expressly that such "general orders" of exemption by "the Supreme Court" shall be made "in open court" and announced from the bench; but the Legislature must have assumed that such would be the practice of that court, in the light of article 1550, R. S., and established custom. Why not?

Ever since 1846 that statute has declared:

"In all cases decided by the Supreme Court, the judgment or decree of the court shall be pronounced in open court."

By analogy, if not technically, and certainly in avoidance of everything that smacks of abhorrent "star chamber proceedings," that statutory requirement fairly and properly is applicable, and, with few exceptions, has been applied and followed in practice in making and in promulgating all orders, including general orders, of the Supreme Court. In my opinion it should be so applied and observed in every instance, whether rigorously required by statute or not.

The stated action of my Associates on January 26th rests, necessarily, upon the postulate that whenever, at least during the constitutional term of the Supreme Court, two or more justices thereof come, together, outside of its courtroom, but "at the seat of government," and in the absence of its bailiff and clerk, and without formally declaring the court open for the transaction of business, said justices in fact and in law constitute and are "the Supreme Court," and, as a necessary legal consequence, then and there validly and instantly and fully and finally may exercise a power which neither the Constitution nor any statute has conferred upon them, or any of them, as justices, but which the Legislature has conferred upon and confided to "the Supreme Court" only, even to the extent of amending or repealing any and all rules previously and duly made and promulgated by that court and having the force of law. That doctrine is, in my opinion, radically unsound.

As a test, let this question be answered: If that power does, indeed, repose in justices of our Supreme Court, may not any two of them, by so writing and signing in chambers an "order of court," instantly amend or wholly repeal any and all rules regulating practice in all the courts theretofore duly made and promulgated by the Supreme Court pursuant to our Constitution and statutes, although such rules have the force of law and effect directly, as to both *time and manner*, the assertion in the courts of the most important rights of the people, including the rights of property, and of even life itself? The answer must be in the affirmative. And will the subsequent carrying of such an order into the minutes of the court, possibly on the last day of the term, impart to it, retroactively, validity as of the date of such signing of the amendatory or repealing "order"?

The issue is, not whether that power will be unrighteously exercised by justices of this court in future, but does it exist in said justices; has it been exercised validly in this instance? The correctness of my conclusion in the negative is emphasized by the fact that the distinction between the power and authority of a court and the power and authority of the members or judges of that court is distinctly recognized and very clearly drawn in the Constitutions and statutes and decisions of many states, and especially so of Texas. That distinction is not merely academic; it is one of vital consequence, and may prove of supreme importance in the government of a free people. Disregard of it necessarily creates precedents fraught with serious danger for the future. Through such encroachments, first, as in this instance, as a matter of mere convenience, but afterward by others for improper purposes, usually comes the breaking down of constitutional and statutory barriers created to protect the rights of the people. My extended vacation study of that fundamental distinction in the grant of powers is reflected in two former opinions of mine. San Antonio & A. P. Ry. Co. v. Blair, 108 Tex. 434, 196 S. W. 502, 1153, and In re Subdivision 6 of Supreme Court Jurisdiction Act of 1917, 201 S. W. 390. To them I refer for a compilation of such constitutional and statutory provisions and of the constructions given them by text-writers and courts in other states and in this state, including various decisions of this court.

Second. The quoted portion of the "minutes" indicates, or at least fairly may be construed and understood to mean, that said "order" of January 26th was "pronounced in open court" on January 28th, thereby becoming entitled to incorporation into the minutes of the proceedings of the court on that day. The fact is that no order or action of the court, or even of said justices, relating to amendment of the court's rules concerning such exemptions, has been announced in open court. As well might said "order" be incorporated in the minutes of the

proceedings of that court on any later day of its present term. Consequently, when considered in connection with the indisputable facts, the quoted minute entry tends to discredit our solemn records.

Third. Inasmuch as said order in chambers was void when and as made, mere entry thereof in the minutes of the proceedings of a subsequent session of said court imparted to said order no validity. At least it did not retroactively make that order valid from the moment in which it was signed. That retroactive effect could not have been accomplished by even formal order of the court itself, expressly so directing, subsequently made, and "pronounced in open court." Any order of that court to that effect would be repugnant to the declaration of our organic law that "no * * * retroactive law, * * * shall be made" (Const. Tex. art. 1, § 16), inasmuch as said order in chambers, if valid, has the force of law. How easy it would have been to have kept well away from the precipice of the unwarranted exercise of power, and from even the semblance of a disregard of fundamental principles which really are as dear to the hearts of my Associates as to my own heart. Whatever may be the law of this matter, this at least is true: This court, which the people, through their Constitution, and the Legislature, by statutes, has clothed with the power to make rules for observance by and in all of our courts, and which, even in the absence of such pronouncements, would have inherent authority to make its own rules, ought to lead in the observance of wholesome practices. Unquestionably the practice against which I here protest is not wholesome.