In re SUBDIVISION SIX OF SUPREME
COURT JURISDICTION ACT
OF 1917.

(Supreme Court of Texas.    March 6, 1918.)

Dissenting opinion.

HAWKINS, J.    The appellate jurisdiction of
our Supreme Court is thus prescribed by our
present statute:

"Article 1521. The Supreme Court shall have
appellate jurisdiction co-extensive with the lim-
its of the state, which shall extend to all ques-
tions of law arising in cases of which the Courts
of Civil Appeals have appellate jurisdiction in
the following cases when same have been brought
to the Courts of Civil Appeals by writ of error
or appeal from final judgment of trial courts:

"1. Those in which the judges of the Courts
of Civil Appeals may disagree upon any ques-
tion of law material to the decision.

"2. Those in which one of the Courts of Civil
Appeals holds differently from a prior decision
of its own or of another Court of Civil Appeals,
or of the Supreme Court upon any such ques-
tion of law.

"3. Those involving the construction or the
validity of statutes.

"4. Those involving the revenue laws of the
state.

"5. Those in which the Railroad Commission
is a party.

"6. In any other case in which it is made to
appear that an error of law has been committed
by the Court of Civil Appeals of such import-
ance to the jurisprudence of the state, as in the
opinion of the Supreme Court requires correc-
tion, but excluding those cases in which the ju-
risdiction of the Court of Civil Appeals is made
final by statute. Upon the showing of such an
error the Supreme Court may, in its discretion,
grant a writ of error for the purpose of revising
the decision upon such question alone, and of
conforming its judgment to the decision thereof
made by it. Until otherwise provided by rule of
the Supreme Court the application for writ of
error in such a case shall immediately after the
title of the cause and the address to the court,
concisely state the question decided by the Court
of Civil Appeals in which error is asserted, in
order that the Supreme Court may at once see
that such a question is presented as is contem-
plated by this provision. This shall be followed
by only such brief and general statement as may
be necessary to show that the question was in-
volved in the cause and in the decision of the
Court of Civil Appeals. More than one question
may be presented in the same application, all
being stated in order as above stated."

Acts 1917, c. 75, p. 140, effective by its terms
on July 1, 1917.

That statute amends R. S. art. 1521, as
amended by Acts 1913, c. 55, p. 107, subdivision
6 of which was as follows:

"(6) Those in which, by proper application for
writ of error, it is made to appear that the
Court of Civil Appeals has, in the opinion of
the Supreme Court, erroneously declared the
substantive law of the case, in which case the
Supreme Court shall take jurisdiction for the
purpose of correcting such error."

This substitution of subject-matter in subdivi-
sion 6 was the principal change made in article
1521 by said amendatory act of 1917; the only
other substantial change in that article being the
insertion of the words "the construction or" in
subdivision 3.

Recently, under the operation of said article
1521, as it now stands, our Supreme Court
reached for consideration, or for reference to
the "committee of judges of the Courts of Civil
Appeals," which was then operating under the
companion statute known as the Supreme Court

Relief Act of 1917 (Acts 1917, c. 76, p. 142),
certain applications for writs of error based up-
on said subdivision 6 as it now stands; where-
upon it became necessary for the Supreme Court
to determine (a) whether said subdivision 6 of
said present statute is or is not constitutional,
and, if valid, (b) whether applications for writs
of error based upon said subdivision 6 are or are
not referable, under said Relief Act (chapter 76),
to said "committee of judges" for consideration
and action by said "committee" in dismissing
the application, or in granting or refusing the
writ of error; and thereupon a majority of the
Supreme Court held affirmatively upon both
questions, this writer dissenting.    Said dissent
was noted in the minutes of the court on Janu-
ary 23, 1918, with the statement that later I
would file an expression of my views in the
premises.    In this connection it is proper to
state that, at the same time, it was determined
by the same majority of this court (c) that while
all applications for writs of error based upon
said subdivision 6 (not including "any cause
in which the judges of the Courts of Civil Ap-
peals shall have disagreed, or which the Court of
Civil Appeals shall have held differently upon
the same question of law the holding of another
Court of Civil Appeals or of the Supreme Court,
or shall have declared void a statute of the
state," Acts 1917, c. 76, § 5), are referable, un-
qualifiedly and unreservedly under said chapter
76, to said "committee," and that, when so re-
ferred, said "committee" will have full and un-
restricted statutory power and authority finally
to pass upon each and all questions properly
presented by such application, even to the ex-
tent of granting the writ of error, or of dismiss-
ing the application, or of refusing the writ, and
thereby finally disposing of the appeal—never-
theless, in view of the frequently changing per-
sonnel of such "committee," and as a mere mat-
ter of practice and expediency, and in order to
conserve and promote unity and harmony in "the
jurisprudence of the state," such applications
shall be referred to the "committee of judges"
solely in order that the "committee" shall deter-
mine whether, in the particular case, "an error
of law has been committed by the Court of Civil
Appeals," and if, in the judgment of the "com-
mittee," such error shall not have been commit-
ted, the writ shall be finally refused by such
"committee"; but if, in the judgment of the
"committee," such error shall have been commit-
ted, then the case shall be recalled by the Su-
preme Court from the "committee," and there-
upon the Supreme Court itself shall determine
whether such error of law, so found by the
"committee" to have been committed, is or is not
"of such importance to the jurisprudence of
the state as in the opinion of the Supreme
Court requires correction"; and from the deci-
sion to the effect that the Supreme Court has
such right and power of recall this writer dis-
sented.

With all due respect to the views of my Asso-
ciates, yet with keen apprehension that serious
and deplorable consequences to our judicial sys-
tem and also to the fundamental rights of many
litigants in matters of great importance inevi-
tably will result from such decision and action
of said majority of this court in the premises,
I state here the reasons which compel me to dis-
sent upon each of said three points.

1. Is said subdivision 6 of R. S. art. 1521, as
amended by said act of 1917, valid?    Assuming,
as I do, perfect good faith upon the part of the
lawmaking department in the enactment of said
subdivision 6 in an honest effort to conform to
constitutional requirements, and giving full ef-
fect as I do to the rule that no part of a stat-
ute should be held unconstitutional unless it is
clearly so, I can find in the language of said
subdivision 6 no escape from the conclusion that
it is clearly and hopelessly unconstitutional for
these two reasons:

. (A) Its terms and provision, as they stand, and without action by the Supreme Court thereunder, are too indefinite to constitute a valid portion of a "law" within contemplation of section 3 of article 5 of the Constitution of Texas. Said subdivision has, indeed, a delusive semblance, and in some respects the outward form, but it lacks the inward, operative, dynamic power, of law. My objection is, not that it is simply meager or obscure in providing methods of procedure (which defects, if any, except as the Constitution provides otherwise, the court validly and properly might supplement and cure, Ashford v. Goodwin, 103 Tex. 491, 131 S. W. 535, Ann. Cas. 1913A, 699), but that, as the finished product falls from the legislative die it lacks an essential element, absence of which renders it nonoperable and, therefore, spurious and invalid.

The acid test must be applied to subdivision 6 as of a date prior to all action of court or judges under it. Without such action it is meaningless as prescribing jurisdiction, because under it no man can say whether, by its words, any particular case does or does not fall within the court's jurisdiction. But, unfortunately, such additional action is not to be by the law-making department.

The first portion of the definition of the class of cases to be embraced by subdivision 6 —"any other case in which it is made to appear that an error of law has been committed by the Court of Civil Appeals"—employs (as do subdivisions 1, 2, 3, 4, and 5) legal terms whose significance and meaning are well and generally understood; hence that portion of subdivision 6, if it stood alone, would be adequately specific, and, clearly, would constitute a sufficient classification by the Legislature, and would be constitutional and valid. But it does not stand alone; it is indissolubly linked with, and is qualified, limited, and restricted by, the addendum "of such importance to the jurisprudence of the state as in the opinion of the Supreme Court requires correction." In that addendum the whole trouble lies. Evidently it comprises an integral and highly important part of the definition of the class of cases which subdivision 6 undertakes to place within the appellate jurisdiction of this court, yet the court, rather than the Legislature, determines what cases require "correction," and thus, by elimination, really determines what particular cases in which "an error of law has been committed by the Court of Civil Appeals" shall, and what cases shall not, be admitted to the appellate jurisdiction of the Supreme Court. The inevitable consequence is that, to the entire extent of subdivision 6, the appellate jurisdiction of this court depends, in the last analysis, not upon any fixed rule or test definitely prescribed by the Legislature, but upon the discretion or judgment or will or whim of the Supreme Court in the particular case. Consequently said subdivision is invalid.

(B) The practical effect of subdivision 6, in real contravention of section 1 of article 2 of said Constitution, but under the camouflage of legislative direction, is to delegate to the Supreme Court power and authority to carve out, and substantially and effectively to prescribe, a large share of its own appellate jurisdiction, that being, under the terms and provisions of said section 3 of article 5, a purely legislative power.

An added feature which but emphasizes the failure of the Legislature therein fully and ultimately and definitely to exercise its own powers in the premises is the fact that the supplementary legislative duty which the Supreme Court thereby is called upon to perform is not to be crystallized in a rule couched in English and promulgated by the court, and corresponding, at least in so far as mere expression of ideas goes, to a "law" enacted by the Legislature, but is to be expressed, by the court only in the usually unformulated terms of its actions upon applications for writs of error in particular cases, with but few opinions, setting forth the grounds or reasons for granting or refusing such writ. Such failure of the Legislature is rendered even still more glaring by holding, as my Associates do hold, that cases may get into the appellate jurisdiction of this court under said subdivision 6, and be "referred," under said Relief Act (chapter 76), to such "committee of judges," with the effect that such "committee," rather than the Legislature, or the Supreme Court, may determine whether the "error of law" really, "in the opinion of the Supreme Court," "requires correction." Thus my Associates ignore the fact that by the terms of article 1521, as so amended, including subdivision 6, both such jurisdictional features must be present in the case before it ever gets into the sphere or field of that appellate jurisdiction.

Said portions of our state Constitution—our organic law, our social compact—which was designed to direct, to curb, and to control, in behalf of the people, both the Legislature and the judiciary, are as follows:

"The Supreme Court shall have appellate jurisdiction only, except as herein specified, which shall be co-extensive with the limits of the state. Its appellate jurisdiction shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction, under such restrictions and regulations as the Legislature may prescribe. Until otherwise provided by law, the appellate jurisdiction of the Supreme Court shall extend to questions of law arising in the cases in the Courts of Civil Appeals in which the judges of any Court of Civil Appeals may disagree, or where the several Courts of Civil Appeals may hold differently on the same question of law, or where a statute of the state is held void." Section 3, art. 5.

"The powers of the government of the state of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another; and no person or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." Section 1, art. 2.

I cannot believe, and it has not been urged, that said section 3, of said judiciary article 5 was designed to repeal or modify section 1 of article 2, supra. They are placed in conflict by upholding said subdivision 6 as valid; they would be left in harmony by holding that subdivision void.

The foregoing seems, to my mind, abundantly sufficient to establish the invalidity of said subdivision 6, and, if voicing the views of a majority of the court, which may speak dogmatically, might well be left to stand without adding supporting argument; but, as mine are dissenting views, I consider it incumbent upon me to present more fully the reasons upon which my conclusion rests.

The terms and provisions and legal effect of the quoted portion of section 3 are of such vital importance in this connection as to justify analytical consideration. That quoted language clearly recognizes and expressly declares the somewhat restricted powers of the Legislature to modify and change, to reduce and to enlarge, the appellate jurisdiction of the Supreme Court; but just as clearly and unmistakably it also restricts to the Legislature the sole and exclusive exercise of that power. Griner v. Thomas, 101 Tex. 36, 104 S. W. 1058, 16 Ann. Cas. 944; Ex parte Whitlow, 59 Tex. 273; Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60; In re Cleveland, 51 N. J. Law, 311, 17 Atl. 772; State v. Commission (Mo.) 192 S. W. 960. Conversely, by necessary implication, said section 3 forbids the Supreme Court, whether working

by itself alone, or in conjunction with the Legislature, or in collaboration with the lawmaking department and any "committee of judges," substantially to exercise all, or even any portion, of that power of fixing or prescribing its own appellate jurisdiction—a power which, under our scheme of government and the unambiguous language of our organic law, abides primarily in the people of Texas, and, secondarily, in the lawmaking department, and never elsewhere. See, also, section 1, art. 2, supra.

Viewing said section 3 of article 5 even. still more closely, its purposes and requirements relating to the appellate jurisdiction of the Supreme Court are found to embrace those following, viz.:

(a) That such appellate jurisdiction shall be restricted to "questions of law" which shall have arisen "in cases of which the Courts of Civil Appeals have appellate jurisdiction."

(b) That such jurisdiction shall be exercised under "such * * * regulations as the Legislature may prescribe"; the word "regulations" relating, primarily, to the time and mode and details of the appeal to the Supreme Court. Schleicher v. Runge, 90 Tex. 456, 39 S. W. 279.

(c) A further, although temporary, limitation upon the operation of such general rule (and one clearly within the power of the Legislature to modify, or to abrogate, only, however, by a definite statute) is set out in the provision that "until otherwise provided by law, the appellate jurisdiction of the Supreme Court shall extend to questions of law arising in the cases in the Courts of Civil Appeals in which the judges of any Court of Civil Appeals may disagree, or where the several Courts of Civil Appeals may hold differently on the same question of law, or where a statute of the state is held void." That quoted language presents a fine example of definiteness in classification of cases with relation to jurisdiction, an example which was overlooked or ignored in drafting and in enacting said subdivision 6.

"Restrictions," as used in section 3, supra, means "limitations" or exceptions. Maddox v. Covington, 87 Tex. 454, 29 S. W. 465. See, also, Schleicher v. Runge, supra. Consequently, the constitutional mandate to the effect that, "under such restrictions" (or, with such limitations or exceptions) as the Legislature may prescribe, the appellate jurisdiction of the Supreme Court "shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction," fairly and necessarily requires that the lawmaking department, rather than that the Supreme Court or any "committee" shall determine and "prescribe," definitely and intelligibly, what, if any, changes in that jurisdiction shall be made. The conclusion that, aside from constitutional amendment, only the Legislature may change that jurisdiction is reinforced and confirmed, unanswerably, by the further express declaration of said section 3 that "until otherwise provided by law" the appellate jurisdiction of the Supreme Court shall include only three therein carefully enumerated classes of cases. The words "by law" were there used advisably, and are deeply significant. They flatly negative the whole idea of partial participation by any portion of the judiciary, at any stage, in the actual work or process of carving out or prescribing such jurisdiction. Moreover, those two short and powerful quoted words "by law" mean not only that the discretion and judgment and will to change that jurisdiction from the limits set, even temporarily, by the people themselves, shall be exercised, if at all, by the Legislature, and by it only, but also that even such legislative will and judgment and discretion in that matter of stupendous importance shall be expressed in the form of a statute or "law." What section of our Constitution gives to the Supreme Court or to the "committee of judges" power and authority to make, or even to supplement, a "law"

by breathing into an inanimate form the breath of life? Can a statute do that? If so, can one as inanimate as is subdivision 6 empower the Supreme Court to breathe life into that very lifeless thing? Furthermore, in framing and in adopting section 3, it must have been contemplated by the Constitution makers that every such "law" shall be full-fashioned and complete and operable, according to its own terms, when it comes from the creating hand of the Legislature, and no wise dependent upon supplementary aid from any outside source. To be valid such law must be one requiring at the hands of the judiciary naught but observance and obedience, with possibly some construction in the exercise of ordinary judicial, in contradistinction to strictly legislative, powers. Surely it is not going too far to say, as I do here, that our Constitution by necessary implication requires that every such "law" shall employ concrete terms of fixed and ascertainable signification, and actually and effectively shall "prescribe" the appellate jurisdiction of the Supreme Court by assigning to that jurisdiction or the involved part thereof certain specific limits and boundaries—definite lines of demarcation—so that, thereby, the extent of that jurisdiction shall be ascertainable upon a practicable working basis indicated by the words of the statute, rather than upon the basis of some mere unstated and transitory concept existing solely in the minds of men belonging to the judicial department, to whom our organic law vigorously denies the exercise of any and all power whatsoever in the matter of prescribing jurisdiction of courts.

From the foregoing it is evident, I think, that the purpose and effect of said section 3 of article 5 are to declare in substance: First, that with only such exceptions as the "Legislature" shall "prescribe" "by law" the appellate jurisdiction of the Supreme Court shall extend to and include all questions of law which may arise in any case which may fall and lie within the appellate jurisdiction of the Court of Civil Appeals; and, second, that, temporarily, and except and when as the lawmaking department itself in the full and final exercise of its own ultimate discretion and judgment and through the exercise of its own entirely adequate and exhaustive and exclusive legislative will and power shall "by law" provide otherwise, the appellate jurisdiction of the Supreme Court shall include only the three classes of cases so carefully enumerated in said section 3 of said judiciary article.

Consistently, therefore, the intent and legal effect of said provisions of our Constitution must be that any and all such "restrictions" or limitations or exceptions to the above-stated general rule defining the appellate jurisdiction of the Supreme Court as the "Legislature" may "prescribe" "by law" shall be couched in such statutory language, and shall be so definite and specific as to apprise litigants, or at least such of their attorneys as are men of fair and reasonable education and general familiarity with the principles of law, of the scope and extent of the appellate jurisdiction to be carried and vested in the Supreme Court by such "law." In other words, unless the "law" prescribing the various classes of cases which are to be within such appellate jurisdiction shall be enacted in final, complete, and operable form by the Legislature itself, it is no "law," and is therefore void; and unless it shall define, point out, or indicate, or "prescribe" with reasonable clearness and certainty at least the class or character or kind of cases which such law attempts to place within the appellate jurisdiction of said court, such law is, in a sense, unintelligible, and to whatever extent it is subject to that criticism is nil and unenforceable. In such instances the underlying reason which forces that conclusion is that, under statutory provisions of that vague and indefinite character,

it manifestly is impossible for litigants, or their attorneys, however capable they may be, to determine from the words of the statute (or subdivision thereof), or in any possible manner to ascertain, in advance of the action by the Supreme Court (or other agency operating for that purpose and performing (?) its peculiar constitutional duties), in a particular case, whether a given "error or law" is or is not within that appellate jurisdiction. Nor is the validity of such a statute sustained or aided by subsequent operations or actions of court or judges under it; the issue here presented not being one of mere construction of the statute.

The foregoing views as to the meaning and requirements of our Constitution have not grown out of peculiar ideas of mine. On the contrary they are, in great measure, substantially the same as those which, long ago, and shortly after the adoption of our judiciary amendment, and in a case which arose under section 3 of article 5, supra, impelled this court, when it was composed of Chief Justice Gaines and Associate Justices Brown and Denman, all now deceased, unanimously to uphold the power of the Legislature to limit by "law" the appellate jurisdiction of this court. Maddox v. Covington, supra. The same principles and the same line of reasoning run through certain previous and various subsequent decisions of this court; but never yet, in so far as I can find and am competent to judge, has any former or present member of this court written and filed one line tending to support the validity of said subdivision 6 of article 1521, except in the opinion of my Associates in Railway v. Blair, 196 S. W. 504, by our present Chief Justice upholding the constitutionality of said Relief Act of 1917 (chapter 76), this writer dissenting. And even such views of my Associates seem of but recent growth and diametrically opposed to their decision in June, 1915, holding the pool hall local option statute unconstitutional. Ex parte Mitchell, 177 S. W. 953, not yet officially reported, this writer dissenting. Therein, through Chief Justice Phillips, they said: "The case presents the question of the constitutionality of the referendum act of the Thirty-Third Legislature, authorizing the qualified voters of any county, or certain political subdivisions of a county, to determine by an election whether pool rooms or pool halls should be prohibited therein, and making it an offense to there operate or maintain them if the result of the election be in favor of their prohibition. The constitutionality of the act is assailed upon two grounds: (1) That it amounts to a delegation by the Legislature of its own legislative power, imposed upon it by the Constitution, which it alone must exercise and which it may not commit to any other agency. * * * The act is plainly unconstitutional, in our opinion, for both of these reasons."

If that statute was unconstitutional for the first-stated reason, then for the same reason said subdivision 6 of article 1521 is much more clearly and more certainly invalid. Said referendum statute at least embodied a complete expression of legislative discretion and will, in intelligible words, and lacked nothing to make it an operable law, although it did embody the principle of local option, requiring the vote of the people of a locality to extend over that territory its active effect; but this subdivision 6 of R. S. art. 1521, is incomplete, from any angle, and by every test.

It is true that in Maddox v. Covington no distinction was drawn by Chief Justice Gaines between legislative powers and judicial powers; but throughout that case the power of "prescribing" the appellate jurisdiction of the Supreme Court was considered and treated as being, under this identical section 3 of article 5, a legislative power; and both on principle and according to a long line of decisions in Texas and elsewhere, as above indicated, such

constitutional provisions should always be treated as restricting all such fundamental powers of government to that department to which those particular powers are confided by the people, and said section 1 of article 2 of our Constitution expressly requires that it shall be done. Why not? A demonstration of the correctness of my application of the foregoing and long-approved analysis of said section 3 of article 5 of our Constitution to said subdivision 6 of R. S. art. 1521, as it now stands, and also of the invalidity of said subdivision 6, is found in the fact that none of the assumed or assumable appellate jurisdiction of the Supreme Court which rests upon or grows out of that subdivision is ascertainable from its language; nor is it ascertainable from our Constitution or from any statute. For all practical purposes the confines of that entire and limitless field of jurisdiction run with the receding horizon, and rest only in the future, and even then in the minds of the Justices of the Supreme Court and not elsewhere. Those confines have never been delineated on paper, or reduced to the common denominator of words—the constitutional vehicle of legislative thought and command.

Obviously, under the presently inoperable terms of said subdivision 6, exercise of power by the Supreme Court is vitally essential to the intelligible completion of that subdivision, thus introducing into its making—into the very throwing in of its woof, though not of its warp—the action and the exercise of discretion and judgment and will of the members of this court, although they stand inhibited by our organic law from exercising any legislative powers or functions. The result is that, to the whole extent of said subdivision 6, and by its indefinite terms, the appellate jurisdiction of this court is left absolutely in nubibus; and to just that extent that appellate jurisdiction is, and necessarily must remain, undefined and utterly unknowable to litigant and to lawyer alike, except and until it shall be worked out and determined, and made practically cognizable, by the Supreme Court (or by said "committee"), through the slow process of exclusion and inclusion, by action upon applications for writs of error in particular cases, and usually without a written opinion. But even though both the time element and the element of uncertainty as to what "errors" the Supreme Court will "consider" are or are not so harmful to the "jurisprudence of the state" as to require "correction" at its hands were removed by immediate action coupled with a full written declaration and statement by that court (which is not possible), even that accomplishment would but voice the result and register an expression of the exercise of the discretion and judgment and will of mere judges, and not of legislators duly elected and sworn and organized as a lawmaking body, and clothed by express terms of the Constitution with power to change "by law" the appellate jurisdiction of this court.

Stated in simple form, the legal and practical effect of said subdivision 6, if valid, is to confer upon the Supreme Court appellate jurisdiction in a vast and indefinite range of cases wherein these two essential elements of appellate jurisdiction must coexist: First, the case must be one wherein "an error of law" shall have been committed by a Court of Civil Appeals; and, second, such error must be one which, in the opinion of the Supreme Court, "requires correction" at its hands. The first element alone does not give jurisdiction; the second also must concur. But said second element necessarily involves the exercise of judicial energy, discretion, and judgment; and in the presence thereof the definition of the class of cases to be embraced and operated upon and controlled by said subdivision 6 as it comes from the hands of the lawmaking department is indefinite and incomplete, and does not

set forth an entire legislative conception or program, and consequently subdivision 6 is not "law," prescribing or changing the appellate jurisdiction of this court from the boundaries fixed temporarily in the Constitution itself; at least it is not such a "law" in the sense required by said section 3. Said portion of article 1521 is therefore nonoperable and void. To energize subdivision 6, yea, even to vitalize it, exercise of some sort of power by the Supreme Court is, as we have seen, absolutely indispensable; yet when so exercised—not in construction of said subdivision, but in aid of it, to supplement and complete it, supplying an essential element not worked out and reduced to words and embodied in the phraseology of the statute itself—the very exercise of that alleged judicial power is, at the same instant, and through the identical act, an exercise of real legislative power. But such simultaneous exercise of both judicial and legislative powers and functions by the same body of magistracy and the exercise by the judiciary of any legislative power are the very things which our state Constitution tried to prevent by declaring that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in instances herein expressly permitted." Section 1, art. 2, supra. Nobody has pointed out or claimed that any exceptional clause of our Constitution "expressly" authorizes this court to "prescribe," or to aid in prescribing, its own jurisdiction. My observation has convinced me that this court has its hands full in attending to its own strictly judicial business, without undertaking, in the guise of judicial action, really to exercise intrinsically legislative powers.

I am loath to believe—I decline to admit—that said judiciary article was designed, not only to permit the Supreme Court thus effectually to carve out, define, control, fix, and "prescribe" a large share of its own appellate jurisdiction in defiance of generally recognized principles of free government, but also to permit that court, in very latitudinous extent, to expand or to contract, at its own will, that portion of its jurisdiction, without even the steadying or restricting or controlling influence of an expressed or fixed or cognizable or ascertainable rule of action prescribed by either the Constitution or the Legislature, and without any guide or standard other than the untrammeled judgment or will of a majority of the Justices comprising that court as to what is and what is not detrimental to the jurisprudence of the state, and without the poor measure of protection to the people which lies in a written opinion stating the grounds which are thought to justify the rejection or the assumption of jurisdiction under that particular subdivision of the statute. Yet that, undeniably, is the legal effect of said subdivision 6, if it is valid.

In many, if not all, of the other American states, and heretofore in Texas, under the several Constitutions, the rule and practice with reference to prescribing jurisdiction of all courts had been to treat it as a proper subject of exclusively legislative power and control, except as expressly set out in and so fixed by the Constitution itself; and such heretofore has been considered the effect and requirement of the above portions, and of similar portions, of our judiciary article relating to the jurisdiction of the Supreme Court and of other courts forming parts of our judicial system. Consistently down to the adoption of said act of 1917, amending R. S. art. 1521, our own Legislatures had entertained and acted solely upon that view concerning their own powers and duties in relation to the jurisdiction of the Supreme Court, and even in that very act to a certain extent the Legislature asserted and exercised its own powers accordingly. Article 1521, supra. Can it be possible that in the adoption of said section 3 of article 5 an intelligent people intended to adopt

a rule and to authorize a practice different from those existing in other states under similar Constitutions, or to make a rule and to authorize a practice relative to the appellate jurisdiction of the Supreme Court, or part thereof, different from the rule to be observed thereafter in Texas with reference to the jurisdiction of any and all other courts? Can it be possible that such hidden and unusual signification and meaning, and such unlimited potentialities for evil—such authority for supplemental and unprecedented joint exercise of legislative and of judicial powers—actually lay hidden in the words of the Constitution of Texas until discovered by the Thirty-Fifth Legislature? If so, what are those words? Or, on the other hand, is it true that, although out of harmony with the rule and practice in other states under similar constitutional provisions such new constitutional rule and legislative practice are applicable, not merely to the Supreme Court alone, but uniformly to all courts of this state? Does our Legislature now possess the right and power to delegate to any and every state court power and authority to carve out and define and "prescribe" its own jurisdiction or some part thereof, the exact character and extent of which is to rest wholly in the bosom of such court until it shall be asserted, from time to time, and only as such court shall see fit, and in particular cases?

Subdivision 6, as it now stands, having been held valid, it might be profitable as well as interesting to inquire here how much further down that line, with reference to jurisdiction of other courts, the Legislature validly may delegate its powers to such courts; but I forbear, because already we have seen enough to make it painfully clear that many of the limitations and restrictions which our Constitution undertook to throw about legislative and judicial powers, as checks and balances in government, concerning the appellate jurisdiction of the Supreme Court, are but reminiscences of a former era. If the reasoning which is relied upon to uphold subdivision 6, as related to the Supreme Court, is sound, and the results tolerable, complaint need not be made over future extension and application of the doctrine to all statutory jurisdiction of any and all other courts of this state. The suggested vista, at best, is bewildering and portentous, because (as no lawyer can deny) no longer is all of the appellate jurisdiction of the Supreme Court ascertainable from our state Constitution and statutes, and to what distressing results the precedent is to lead no man knoweth. Here once again I set a danger signal.

Possibly the perspective which unrolls before our unaccustomed eyes may be focused and viewed most comprehendibly by inquiring what the status would be if subdivision 6, with but slight amendment, were made to carry all the appellate jurisdiction of the Supreme Court. That is entirely possible by legislative action if subdivision 6 is valid.

The Legislature unquestionably has full power and authority to repeal, outright, subdivisions 1, 2, 3, 4, and 5, and also to strike the figure "6" and the word "other" from the first line of subdivision 6 of article 1521, supra. With that done, this court would no longer be required, but by the terms of subdivision 6 (it being held valid) would have the right, power, and authority to assume, and to exercise, appellate jurisdiction coextensive with the broad sweep of that subdivision 6. By repealing article 1591, which declares, in substance, that in certain therein enumerated classes of cases (boundary, slander, divorce, etc.) the judgments of the Courts of Civil Appeals shall be final, and by correspondingly striking from said subdivision 6 of article 1521 the words, "but excluding those cases in which the jurisdiction of the Court of Civil Appeals is made final by statute," the Legislature validly could extend the unrestricted

operation of subdivision 6, as so amended, over questions of law, in all cases within the appellate jurisdiction of Courts of Civil Appeals. Thus the then only controlling statute (article 1521, as so amended by said act of 1917 [chapter 75]) would confer upon the Supreme Court optional appellate jurisdiction in all such cases, but in no instance or case whatever would this court be bound or required to take or exercise appellate jurisdiction. Furthermore, in no instance or case whatsoever could this court reasonably or legally be expected or asked to take or exercise appellate jurisdiction except upon a showing, satisfactory to the court, that in such particular case the Court of Civil Appeals had committed "an error of law" which was of such importance to the jurisprudence of the state as "in the opinion of the Supreme Court requires· correction."

Thus, until otherwise provided by law, and without the change of a single word in our Constitution, and despite all its rigorous phraseology bearing upon the issue, this court, to all intents and purposes, practically and legally (?) would be the sole architect and author, although not necessarily the registrar, nor the only judge, of its own entire appellate jurisdiction. This court, being thus free in all such appealed cases to assume and exercise, and likewise just as free to refuse to take and exercise, appellate jurisdiction, according to the peculiar and possibly changing views of the court as to whether such a discovered error of law does or does not, in the opinion of the Supreme Court, require correction, the practical effect of the indicated or assumed statutory amendments unquestionably would be to take away from the Legislature, where our Constitution placed it, and to delegate to the Supreme Court the real, actual, effective, and ultimate work of prescribing the entire appellate jurisdiction of that court. Under the indicated or assumed conditions, the invalidity of subdivision 6 might be more apparent than at present, but not more certain. The difference would be one of extent only.

For the sake of the argument let it be conceded that under such assumed statutory conditions each and every action of the Supreme Court and of said "committee" in assuming and in exercising the Supreme Court's then practically unlimited appellate jurisdiction would be prudent and wise, conserving justice, and improving the jurisprudence of the state, however much the dockets of this court might be flooded. Likewise let it even be conceded that the makers of our Constitution acted unwisely in vesting in the Legislature, rather than in the judiciary, power and authority to define and prescribe all jurisdictions of all our courts except as expressly defined by the Constitution itself. For present purposes let all that go, since it· is not vital to the issue. But let this be clearly understood: The one thing upon which I do insist herein is that the appellate jurisdiction of this court shall be definitely prescribed by the Legislature, "by law," and not by this court, and not by a "committee of judges," until our state Constitution shall have been so amended or substituted as expressly to vest in this court (rather than in the Legislature) the transcendant and unprecedented power of designing and fashioning, of carving out and prescribing, or reaching out and grasping, of assuming and exercising, just such appellate jurisdiction as a majority of the court, from time to time, may deem proper and expedient, and no more. If that sad day shall ever come, may a living sense of self-preservation induce the people of Texas to write into even such revolutionary document some adequate requirement that before actually exercising any portion of such undefined jurisdiction the Supreme Court shall, in writing, define it, and shall "prescribe" its scope and extent in such form and manner as that, from some written or printed page the litigant in this court, or at least, his educated and trained and experienced and competent attorney, may be able to determine, with some fair and reasonable degree of certainty or satisfaction, whether a particular lawsuit then is or is not within the appellate jurisdiction of this court. Even that would mark in the stated respect a decided improvement upon the now existing status; but, in view of the recently developed impotence of the quoted and very plain provisions of our present Constitution, it may prove impossible to frame that suggested requirement in such words as to insure its adequacy and effectiveness.

The now existing status presents great possibilities for wrongs and for deprivation and denials of substantial civil and property rights and the only protection against such possibilities lies in such measure of integrity and ability as may be possessed by the men who, from time to time, may constitute this court. As to that continuing status I respectfully voice my unqualified discontent and record here my solemn protest.

Coexistent and undergirding and supplementing and safeguarding that measure of protection, and in unrestricted and beneficent operation at all times, should be, at least, every applicable restrictive provision of our present state Constitution. But, under said recent decision and action of this court, they are operative no longer. Such abdication by the Legislature of its own high legislative powers and duties, and such substantial delegation thereof to any portion of the judiciary, even to this court, is, I apprehend, scarcely less dangerous to our most sacred institutions and to the rights of litigants than would be a direct and overt invasion by the Legislature of the Constitution-given rights and powers and duties of the judiciary; and the assumption and exercise of those powers by this court, and the subdelegation, or even the partial or restricted subdelegation, thereof, to said "committee of judges," constitutes what seems to me to be a deplorable chapter in the judicial history of Texas. To prevent both such consequences was, I doubt not, the purpose and design of the quoted provisions of our Constitution, and heretofore in Texas such have been their happy construction, operation, and effect. I am deeply convinced, and under a distressed sense of official duty declare here, that only by adherence to the ordinary signification of the language employed in that Constitution, and to· the established rules of construction which heretofore have controlled its interpretation and the interpretation of similar provisions of the organic laws of our sister states, can we hope for a continuation of the proper co-ordination and co-operation of the three separate departments of our state government, and the protection of civil and property rights.

2. Said subdivision 6 being so held valid, should it be construed and applied as contemplating that cases falling within its terms, but not involving "dissent," "conflict," or the "construction" or "validity" of a state statute, may be referred by the Supreme Court to, and be acted upon by, said "committee of judges," or should said subdivision be construed and enforced as requiring that the Supreme Court, and· it alone, shall consider and act upon all applications for writs of error in such cases? In marked antagonism to the above-quoted provisions of our Constitution, and also to the terms and spirit and intent and legal effect of said Jurisdiction Act of 1917 itself, and especially of said subdivision 6 thereof, are said determination and action of the majority of this court in subdelegating, in cases arising under said subdivision 6, that legislative-judicial power and authority to such "committee of judges," to be· exercised, whether in whole or in part, by such "committee," with never a written opinion.

What reason is disclosed by said subdivision 6, or by all of said article 1521, of which it is

part, or by said Jurisdiction Act (chapter 75) as a whole, or even by said Jurisdiction Act (chapter 75) and said Relief Act (chapter 76) taken together and construed as one statute, for holding that the Legislature intended that such mere "committee of judges" should exercise powers and perform duties which said subdivision 6 expressly undertook to confer upon the constitutional Supreme Court by name? Let us look that question squarely in the face on its merits.

First, what is there in said subdivision 6, or in any other portion of said chapter 75, to declare or to indicate, or to suggest, or even remotely to hint, that the grant of appellate jurisdiction carried by that subdivision is to any extent or in anywise to depend upon any "opinion" of such "committee of judges"? Absolutely nothing. On the contrary, the declaration therein substantially to the effect that, even though such case shall present an error of law committed by the Court of Civil Appeals, such case shall not fall or lie within the appellate jurisdiction of the Supreme Court, unless, "in the opinion of the Supreme Court," such error is "of such importance to the jurisprudence of the state as requires correction," unequivocally and unambiguously restricts to the Supreme Court itself the exercise of that stated power and the performance of that indicated duty, and utterly excludes all idea of referring such a case to said "committee."

Any "committee of judges of the Courts of Civil Appeals" might readily and correctly ascertain whether in such a case an "error of law" had been committed by some one of those courts —but how could such "committee" know what would be "the opinion of the Supreme Court" as to whether such error was of such importance as to require correction? Obviously that is a mental impossibility. I assume that the Legislature knew that was impossible, and did not intend to require or to authorize the Supreme Court or "any two of the Justices thereof" to require of such "committee" the performance of so absurd a task.

Very plainly the only classification of cases attempted by said subdivision 6 is solely in terms of "the opinion of the Supreme Court," without any mention of any "committee of judges." Obviously, then, the legislative intention was to make the exercise by the Supreme Court of its own judgment in such particular case through affirmative findings (a) that therein an error of law has been committed by the Court of Civil Appeals, and (b) that such error is of such importance to the jurisprudence of the state as to require correction, conditions precedent to the ultimate classification of such a case as one within the appellate jurisdiction of the Supreme Court. Now, logically, those two questions must be determined at the very threshold of the exercise by that court of appellate jurisdiction in such case; and not until such judgment shall have been exercised by that court upon both such jurisdictional points, and really not until that court shall have found affirmatively upon both points, can the particular case be said to be within such appellate jurisdiction. It follows that not until then, if at all, is the Supreme Court empowered by said Relief Act (even if it be valid) to "refer" to the "committee of judges" the application for writ of error in such case, and then there is no need of referring it, both jurisdictional issues having been decided already by the Supreme Court, and that decision having determined the disposition to be made of the "application." Moreover, if "applications" in cases arising under said subdivision 6 may be acted upon by "any two" Justices of that court, or if they may be referred to such "committee" for its final action thereon, why should subdivision 6 provide, as it expressly does, that until otherwise provided by rule of the Supreme Court, "the application for writ of error *in such*

*a case* shall * * * state the question decided by the Court of Civil Appeals in which error is asserted in order that "*the Supreme Court* may at once see that *such a question* is presented as is contemplated by this provision"? (Italics mine.) And why should it provide also, as it does, that "upon the showing of *such* an error the *Supreme Court* may, *in its discretion*, grant a writ of error," for the purpose of conforming the judgment of the Court of Civil Appeals "to the decision made by it"? (Italics mine.) Such "discretion" evidently relates to the importance of the "error of law" to "the jurisprudence of the state," and "it" refers to the Supreme Court. No corresponding provisions appear in, or with reference to, subdivisions 1, 2, 3, 4, or 5 of article 1521. Why that difference between the sixth and the other subdivisions of that article, if not to leave cases arising under the other subdivisions subject to action by "any two" Justices of this court, or to reference to such "committee," under said Relief Act, and to prevent cases within the terms of said sixth subdivision from being so acted upon or referred? For that difference I can find no other reason.

Out of deference to the Legislature I assume that the quoted terms and provisions of subdivision 6, including those concerning the form of the application thereunder were inserted therein for some deliberate purpose, and that they have some meaning. If that purpose and meaning are not what I construe them to be, what are they? To deny those words that purpose and effect is practically to strike them out. How can this court do that? Candidly, the peculiar phraseology of said subdivision 6, as a whole, is such that, were it not for the three exceptions set out in section 5 of said Relief Act, which undertook to authorize (a) the designation of such "committee of judges" and (b) reference to such "committee" of applications for writs of error, with certain exceptions, it probably never would have occurred to the mind of any man that any set of men, or agency, or tribunal, other than the "one Supreme Court," could exercise that power and perform that duty, or any part thereof. However, it has been suggested that said quoted expressions of subdivision 6 have no special significance, in that all other subdivisions of said article 1521, as it now stands, also look, impliedly, although not expressly, to the "opinion" and "discretion" and action of the Supreme Court thereon as an effective test of jurisdiction; and thereupon it is claimed and urged and held that all six subdivisions are therefore upon a common plane, and that the whole matter is controlled by said Relief Act (chapter 76), and that its general provisions authorizing reference to such "committee" of applications for writs of error in cases within the appellate jurisdiction of this court, excepting only the three classes of cases enumerated in section 5 of that chapter (sequor), apply to and include all cases falling within that subdivision 6 of said Jurisdiction Act (chapter 75).

Said Relief Act declares: "It shall be the duty of the Justices of the Courts of Civil Appeals so designated * * * to take up, consider and act upon such applications for writs of error, whether then pending or afterwards filed as may be referred to them by Supreme Court or any two Justices thereof, by granting, refusing or dismissing the same." Section 3.

*In support of the view that subdivision 6* does not specifically require final action by the Supreme Court itself upon applications based thereon, I am pointed, for an analogy, to said article 1521, as amended in 1913, and to the fact that said "substantive error clause" thereof (subdivision 6) also expressly invoked "the opinion of the Supreme Court," although the other subdivisions of that article, as then amended, invoked its opinion by implication only. The suggested analogy is purely fanciful for two reasons: (a) Because the classification of cases made in that subdivision 6—"those in

which * * * the Court of Civil Appeals * * * erroneously declared the substantive law of the case"—is definite, complete, and operable, and because (b) when that statute was enacted, said Relief Act was not in existence, and there was neither a "committee of judges," nor even a semblance of statutory authority for the designation of one, and, necessarily, and, in contemplation of said act of 1913, as well as of the Constitution, it was the duty of the Supreme Court to pass upon all applications for writs of error; hence the expression "in the opinion of the Supreme Court" as used in said "substantive error clause" of 1913 carried no restrictive meaning, and added nothing to the significance or legal force of that subdivision 6. But that status was changed, materially, by said legislation of 1917; and in the light of said Relief Act, authorizing the designation by the Supreme Court of what it calls a "committee" to perform, finally, a large share of the constitutional duties of that court, said above-quoted expressions of subdivision 6 of said article 1521, as it now stands, relating to the "opinion" and "discretion" and action "of the Supreme Court," become pregnant with meaning, and inflexibly restrictive in effect.

Said suggestion that said quoted expressions of the present subdivision 6 are meaningless, and said conclusion that the entire matter of referring "applications" to such "committee" is controlled by said Relief Act, ignore or defy universally established and herein mentioned rules of statutory construction which are sound in reason and often have been sanctioned and followed by this court. Said suggestion and said conclusion could be urged with more appearance of reason if said two acts of 1917 could be construed and applied as separate statutes. But they are not to be construed and applied separately. They were passed at the same session of the Legislature and at practically the same time, and were approved by the Governor on the same day; and, although said Relief Act (chapter 76) took effect immediately upon its approval on March 15th, and the Jurisdiction Act (chapter 75) became effective by its terms only on July 1, 1917, the two acts should be construed and applied, as far as practicable, as one statute. To that effect are the settled rules of construction and the decisions of the courts of this state, and such, as I understand it, is the view of my Associates. Treating, then, the two chapters as forming a single statute, and viewing it "from its four corners," it is perfectly plain to my mind that while the Supreme Court still has discretionary power, by the terms of section 5 of said Relief Act, to pass upon any application for a writ of error based on any one of the other subdivisions of article 1521 as it now stands, and while, in that sense, each of those subdivisions still impliedly invokes "the opinion of the Supreme Court," they all do it in a merely permissive way, leaving that court free in such cases to "refer," under section 3 of said Relief Act, the "application" to such "committee"; whereas the express language of said subdivision 6 relating to the Supreme Court is mandatory, not merely permitting, but requiring, this court itself to pass on every such "application." Construing said two acts as one, the only reasonable effect which can be given to said repeated references in said subdivision 6 to "the Supreme Court" and to its "discretion" and action is to draw and establish a sharp distinction for jurisdictional purposes between the action of the Supreme Court and the action of "any two" of the Justices of that court or of such "committee of judges," in cases falling within said subdivision 6, whatever such cases may be found or held to be. If given such meaning and legal effect, said reference in said subdivision 6 to (a) the "opinion," and (b) to the "discretion," and (c) to the action "of the Supreme Court" itself, in cases of that class and character, are full of meaning and significance, while upon any other theory of construction they are utterly without legal meaning or force.

A cardinal and generally observed rule of construction is that (as frequently declared by this court), where it can be done reasonably, some meaning and legal effect should be attributed to every word in a statute. That rule should be applied here to the issue which I am now considering, making each provision of said subdivision 6 serve a distinct legislative purpose. The consequence would be that no case falling within the terms of said sixth subdivision shall be considered as actually within the appellate jurisdiction of the Supreme Court until that court itself shall have found, through the process prescribed by said subdivision 6, the existence of both essential jurisdictional facts; from which it would follow, necessarily, that such cases are not referable to the "committee of judges."

In Haverbekken v. Hale, 203 S. W. ——, which involved the opening of a second-class road, decided February 27, 1918, this court, through Chief Justice Phillips, said: "The theory of article 6871 doubtless was that under certain necessities the court should be free to lay out new roads or straighten existing ones of its own initiative. But it was clearly not intended that in all cases it should so act. To ascribe such an intention to the Legislature is to impute to it no purpose whatever in its enactment of articles 6875 and 6876. It renders them vain and meaningless. * * * Article 6871 has no more force than have articles 6875 and 6876, and they should not be made to yield to it. It is to be assumed that they were all enacted for a purpose and to perform a useful office. They are to be construed, if possible, so that each may be given full effect. They readily admit of the construction we have indicated, which accords with that result." See, also, Cole v. State ex rel. Cobolini, 106 Tex. 472, 170 S. W. 1036, construing subdivision 6 of this same article 1521, as amended in 1913, harmonizing it with R. S. art. 1591 (Acts 1892, 1st called Sess. p. 26), which declares the finality of judgments of Courts of Civil Appeals in certain classes of cases. That opinion also was by Mr. Justice Phillips. Therein he said: "Knowledge of an existing law relating to the same subject is likewise attributed to the Legislature in the enactment of a subsequent statute; and when the later act is silent as to the older law, the presumption is that its continued operation was intended unless they present a contradiction so positive that the purpose to repeal is manifest. To avoid a state of conflict an implied repeal results where the two acts are in such opposition. But the antagonism must be absolute—so pronounced that both cannot stand. Though they may seem to be repugnant, if it is possible to fairly reconcile them, such is the duty of the court. A construction will be sought which harmonizes them and leaves both in concurrent operation, rather than destroys one of them. If the later statute reasonably admits of a construction which will allow effect to the older law and still leave an ample field for its own operation, a total repugnance cannot be said to exist, and therefore an implied repeal does not result, since in such case both may stand and perform a distinct office." In the application which the majority of this court there made of the stated principle of statutory construction I did not concur, because I considered the conflict irreconcilable, the "antagonism * * * absolute," operating a repeal, pro tanto, of article 1591. See my dissenting opinion in McFarland v. Hammond, 106 Tex. 580, 173 S. W. 645, and my addendum to Spence v. Fenchler, 107 Tex. 443, 180 S. W. 598. But the principle itself is sound; and it applies with added force to contemporary legislation, and particularly so to different portions of the same statute. Spence v. Fenchler,

107 Tex. 457, 180 S. W. 597; McGrady v. Terrell, 98 Tex. 427, 84 S. W. 641; Railway v. Railway, 86 Tex. 537, 26 S. W. 54; Lufkin v. Galveston, 63 Tex. 437; Rosenberg v. Shaper, 51 Tex. 134; Lewis v. Aylott, 45 Tex. 190; 15 Michie's Tex. Dig. 965–967.

In the Cole Case Judge Phillips invoked that principle with the effect of practically nullifying what I consider the utterly inconsistent and consequently repealing provisions of that subdivision 6 of article 1521, while in this instance he refuses to apply that same principle, with the effect that the restrictive force of this subdivision, this subdivision 6 of article 1521, also is effectively denied. In other words, in the Cole Case, where the principle was not applicable, it was applied, while in the present case, wherein it is applicable, application of the principle is denied by a majority of this court. In both instances the legislative will, as I understand it, is thwarted, and in that respect only are said majority decisions consistent. Said decision in the Cole Case and the action of the majority of this court with regard to what I consider the restrictive provisions of subdivision 6 of article 1521, as amended in 1917, present the two extremes, and said opinion in the Haverbekker Case, in which I concurred, represents the middle and true ground relative to the application of the above-stated principle of statutory construction.

The principle which Chief Justice Phillips so recently and so forcibly invoked in the Haverbekker Case, concerning the opening of the road, and which previously he had invoked in the Cole Case, concerning subdivision 6 of article 1521 as amended by the act of 1913, is largely identical with the principle which I invoke here concerning subdivision 6 of that same article as amended by said two-chaptered statute of 1917. The application of that principle to the immediate issue here under consideration is obvious, and fully sustains my conclusion that said subdivision 6 of article 1521, as it now stands, was intended, and should be construed and applied, as establishing a fourth restriction and exception upon the statutory power of this court to "refer" to said "committee" applications for writs of error.

Studying said two acts of 1917 together as contemporaneous portions of but one statute, and applying said approved principles of construction, we find that the one consistent legislative purpose was not to authorize reference to said "committee" of cases falling within the appellate jurisdiction of this court by virtue of said subdivision 6 of article 1521, as therein amended, but to constitute that entire class of cases a clear-cut restriction upon the statutory power of "any two" Justices of the Supreme Court (section 5), acting otherwise than as a court, to pass upon applications for writs of error, and also a distinct and inflexible exception to said power of the Supreme Court to refer "applications" to such "committee."

Now it is true that said Relief Act (chapter 76) in section 5, after declaring that, "when deemed expedient," the Supreme Court still may pass upon any application for a writ of error in any case, specifies only three exceptions, to wit: (1) Cases involving "dissent"; (2) cases involving "conflict" in decisions; and (3) cases in which a statute of the state has been "declared void by a Court of Civil Appeals"—and couples such exceptions immediately with the express declaration that in such exceptional cases "the application for a writ of error shall be passed upon by the Supreme Court." But just as effectively, and almost as plainly, said Jurisdiction Act (chapter 75) declares such fourth exception by placing through said subdivision 6 within the appellate jurisdiction of this court an additional class of cases which is there defined, as hereinabove shown, only in terms of "the opinion of the Supreme Court." The legal effect of that mode and form of classification is to challenge and elicit the opinion or action of the Supreme Court, as a court, rather than of "any two" Justices thereof, acting not as a court, and rather than of the "committee of judges," upon each of said two vital jurisdictional issues. The supporting requirements of said subdivision 6, supra, prescribing, as not prescribed by statute with regard to any other class of cases, certain essentials of the application for the writ of error under subdivision 6, make perfectly clear the legislative intent that the Supreme Court, as a court, and it only, shall pass upon those applications. Was not the Legislature just as free to set out in one of the two chapters of that statute as in the other a limitation and restriction, in the nature of an exception, upon the power of the Supreme Court to "refer" appealed cases to such "committee of judges" for final action by such "committee" upon applications for writs of error? Certainly so. Ditto as to the restriction upon the new power of "any two" Justices of this court to act, out of court, on such applications.

I cheerfully concede that these two acts, treated as one statute, might have been more artistically drawn, and that the legislative intent would, indeed, be more clearly apparent if the fourth stated limitation or exception upon said power of reference had been set out, expressly and specifically, in section 5 of said Relief Act, instead of by necessary implication only in subdivision 6 of said Jurisdiction Act; but that, unquestionably, is a mere matter of mechanics, not affecting the meaning or legal effect of the two acts treated and applied as one. To hold otherwise is to sacrifice the heart of legislative intent upon the altar of form. I am unwilling to do that.

It has been suggested, in support of the view that controlling effect should be given to said Relief Act, that in enacting said subdivision 6 of said chapter 75 the Legislature was mindful of the three stated exceptions concerning reference of cases, as set out in section 5 of chapter 76. The reply is that the converse is just as true. This court should presume, conclusively, that in enacting the provisions of said section 5 which set out said three exceptions upon that power of reference in language which does not purport to include all exceptions or restrictions relating to such power, the Legislature was mindful also of the additional or fourth, restriction or exception upon that power, which by necessary implication is set forth in said subdivision 6, and meant that all four exceptions should be effective. Both acts are essential parts of one statute, and neither said section 5 nor said subdivision 6 controls the other.

The primary and proper and immediate and legal effects of section 5 of chapter 76 were, not to authorize the reference to such "committee" of applications for writs of error, but (a) specifically to preserve intact the pre-existing power of the Supreme Court with reference to passing upon the merits of any and all applications for writs of error "when deemed expedient," and (b) to confer that power, for the first time, upon "any two" Justices of that court, and (c) to make it mandatory upon that court, *as a court*, to pass upon "applications" in three certain classes of cases. Said section 5 declares: "The Supreme Court shall *still have power* to act *upon applications for writs of error, when deemed expedient*, and the same power is hereby conferred upon the Justices of that court, action by *any two of whom* shall be sufficient. And in any cause in which the judges of the Courts of Civil Appeals shall have disagreed, or which the Court of Civil Appeals shall have held differently upon the same question of law the holding of another Court of Civil Appeals or of the Supreme Court, or shall have declared void a statute of the state, the application for writ of error *shall* be passed upon *by the Supreme Court*." (Italics mine.)

Did the Legislature, by there enumerating three, and only three, restrictions or exceptions upon the power to "refer" applications bar itself, conclusively, from setting out a similar and additional and fourth restriction in the other chapter of that same statute? Of course not; and there, in such other portion of the same statute, said fourth restriction stands, as conspicuous as a Dutch barn.

It is true that the first, second, and third restrictions upon the stated power of reference are set out specifically, while the fourth stated restriction upon the same power (which last-mentioned restriction operated, as well, to limit the stated statutory power of "any" two," Justices of that court) is made by necessary implication only; but, according to all standards and all generally recognized rules of statutory construction, both methods or forms of expressing legislative purpose and intent should be held equally effective. However expressed, such purpose and intent, when ascertained, are conclusive upon all courts. In this instance, and as hereinabove shown, the intent of the Legislature to restrict to "the Supreme Court" itself rather than to leave to such "committee" in cases arising under said subdivision 6 the determination of the issues as to whether the alleged "error of law" on the part of the Court of Civil Appeals was committed, and also whether such error if any, is "of such importance to the jurisprudence of the state" as to require "correction," are absolutely and unquestionably certain, and logically constitute, by necessary implication, and in legal effect, a positive and fourth and binding exception upon said power of the Supreme Court to "refer" cases to such "committee of judges" for its action thereon in dismissing the application or in granting or in refusing the writ.

It follows that in referring to such "committee" applications based upon said subdivision 6 of article 1521, as it now stands, this court at once exceeded its constitutional and also its statutory power and authority, and expressly failed, and, in effect, declined, to discharge and perform duties which said subdivision 6, if valid, imposed upon this court, as a court, and upon it alone, and by necessary implication, excluded from its power of reference, or subdelegation, to such "committee of judges." But if said subdivision 6 ought to be construed as permitting such reference of "applications" based thereon, that is merely an added reason for holding that entire subdivision 6 unconstitutional.

3. Subdivision 6 having been so held valid, and having been construed, in conjunction with said Relief Act, as authorizing reference to such "committee" of "applications," may such reference be for the restricted and sole purpose of having such "committee" determine simply whether such application presents an "error of law" committed by a Court of Civil Appeals? And, that question having been decided affirmatively by such "committee," may the Supreme Court thereupon recall such application, and determine for itself whether such error is or is not "of such importance to the jurisprudence of the state" as, in its opinion, "requires correction"? Certainly not. If either that power of partial reference of applications or that power of recall exists in the Supreme Court, whence is it derived? Not from the Constitution, nor from any other statute, nor yet from said legislation of 1917, which alone attempts to authorize such designation of three associate justices of Courts of Civil Appeals to act, finally, on all referred applications for writs of error. Said Relief Act (chapter 76) declares it to be "the duty" of such "designated Justices" (now known as the "committee of judges") "to take up, consider and act upon such applications for writs of error * * * as may be referred to them by Supreme Court or any two Justices thereof, by granting, refusing or dismissing the same." Section 3. That act did not provide or contemplate that the Supreme Court and said "committee" shall make "two bites at the same cherry," or two investigations of the same question of law as set out in the same "application."

Nowhere does any law confer authority upon the Supreme Court, or upon any two Justices thereof, or upon such "committee" for partially referring, or for only partially acting upon any application. No real analogy is presented by the practice under which Courts of Civil Appeals "certify" particular questions of law to this court for decision, because that practice is expressly authorized by law. R. S. arts. 1619, 1620.

But for that statute, that power would not exist; so here, in the absence of a statute authorizing such partial reference of and such partial decision upon "applications," such power is nonexistent; and the exercise of that power is in the very teeth of our Constitution and of said statute, and is a nullity. "There are not sides" to that feature of this matter. That remark applies also to the kindred question relating to the assumed power of partial recall, and for that matter of any recall by this court of any "application" once referred to such "committee."

Said "committee" is not a court, and in Railway v. Blair, supra, my Associates expressly so declared. Said practice is palpably violative of section 3 of said Relief Act. For both reasons the power of making and promulgating rules (not in contravention of any statute), governing procedure in "courts," is not applicable to proceedings in relation to, or before, or by, such "committee." Const. art. 5, § 25; R. S. art. 1524. But I apprehend that even if said legislation of 1917 expressly authorized the Supreme Court at will to recall referred cases from the further consideration and action of said "committee," that would be wholly inadequate to authorize the Supreme Court to require or to permit the "committee" to pass solely upon the question as to whether or not a particular case arising under said subdivision 6, which shall have been referred by the Supreme Court to such "committee," is or is not one in which the Court of Civil Appeals committed an error of law, and to deny to such "committee" the determination of the question as to whether such error is or is not so hurtful to the jurisprudence of this state as to require correction. The mandatory duty of the "committee" is that of "granting, refusing, or dismissing" all referred applications. The deplorable truth of the matter is that the whole conception and practice of such partial reference, and of such recall, of "applications," being absolutely unauthorized by law, constitute nothing on earth but the sheerest acts of judicial legislation on the part of the Supreme Court.

Even if it were shown or conceded that said adopted practice is in some or even in all respects superior to that prescribed by said legislation of 1917, that would not add one iota to this court's power in the premises, nor properly control the construction of that statute; that would be proper matter for consideration by the lawmaking department only.

All arguments of convenience and of feasibility which have been or can be advanced in support of said adopted practice cannot legalize it; nor can they, in my estimation, justify this high court in setting such conspicuous example of rank usurpation of power and authority, and of utter disregard of the plain and mandatory provisions of a statute which this court itself has so declared valid.

In support of my views, as hereinabove expressed, I refer to my opinion entitled "In re Supreme Court Dockets Relief Act of 1917," not yet officially reported; Railway v. Blair, 196 S. W. 1153.

Just here I wish to qualify, somewhat, certain

expressions of mine therein (page 1190 of 196 S. W.) to the effect that the words "in the opinion of the Supreme Court," as used in subdivision 6 of article 1521 as amended by said act of 1913, and also in subdivision 6 of that article as amended by said Jurisdiction Act (H. B. 38) of 1917, are mere surplusage, and that the meaning of each subdivision of said article, as amended in 1913, and as amended in 1917, would be the same, whether embodying said quoted expression or not. The principal question there under consideration was the validity or invalidity of said Relief Act; and a subsidiary question involved its construction, to some extent, and my reference there to provisions of said Judiciary Act (chapter 75, H. B. 38) was merely by way of obtaining a side light. As the context there shows, 1 was endeavoring, mainly, to establish the proposition that, from a constitutional standpoint, final action upon any application for a writ of error, whether by the Supreme Court itself or by the "committee of judges," involves the exercise of a power which is, at the same time, both judicial and supreme; and from that standpoint, and in that sense, the expressions to which I refer were correct. Moreover, as there applied to article 1521, as amended in 1913, said expressions were correct in an unrestricted sense, inasmuch as the classification of cases there made by that subdivision 6—"those in which * * * the Court of Civil Appeals has * * * erroneously declared the substantive law of the case"—would constitute, in the absence of the words "in the opinion of the Supreme Court," a definite and complete assertion of legislative will and judgment prescribing jurisdiction, and there was then no statute authorizing or attempting to authorize reference to the "committee of judges" of any application for a writ of error. But, as applied to subdivision 6 of article 1521 as amended by said Jurisdiction Act of 1917, in testing out the issues here under consideration (as to the sufficiency and validity of the attempted classification of cases set out in subdivision 6, and as to the authority to refer to said "committee of judges" applications in such cases) the above-mentioned former expressions of mine are too broad, and really are incorrect, in that, as hereinabove shown, and upon both of those issues, the words "in the opinion of the Supreme Court" have a vital and controlling effect, in the one instance forbidding such reference of such applications, and in the other delegating from the Legislature to the judiciary the duty and the operative work of prescribing, to a great extent, the appellate jurisdiction of this court.